Shawn R. Perez, Esq.
Nevada Bar No. 10421
**Law Offices of Shawn R. Perez**
7121 W. Craig Road, #113-38
Las Vegas, Nevada 89129
(949) 492-9545 Telephone
(702) 485-3977 Telephone
shawn711@msn.com

Ariel Mitchell, Esq. *(pro hac vice admission pending)*
**The Law Office of Ariel Mitchell, P.A.**
500 NW 2nd Ave. #12864
Miami, FL 33101
Tel: (305) 903-5835
ariel@arielesq.com

*Attorneys for Plaintiff Ashley Parham*

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY PARHAM, ) | Case No.: |
| Plaintiff, ) | |
| v. ) | COMPLAINT |
| ) | DEMAND FOR JURY TRIAL |
| SEAN COMBS a/k/a ) | |
| "P. Diddy," "Puff Daddy," "Love," ) | |
| "Puffy" and "Diddy," ) | |
| Kristina Khorram, ) | |
| Shane Pearce, ) | |
| John Does 1-3 and ) | |
| Jane Doe, ) | |
| Defendants. | |

**TRIGGER WARNING:
THIS DOCUMENT CONTAINS HIGHLY GRAPHIC INFORMATION
OF A SEXUAL NATURE INCLUDING ALLEGATIONS OF RAPE.
SEXUAL ASSAULT. SEXUAL BATTERY. KIDNAPPING AND SEX
TRAFFICKING.**

Plaintiff, Ashley Parham, ("Plaintiff") files her Complaint against Defendants Sean Combs ("Diddy"), Kristina Khorram ("KK"), Shane Pearce ("Shane"), John Does 1-3 ("Does 1-3") and Jane Doe ("Jane Doe") (together, "Defendants"), allege as follows:

## INTRODUCTION

1. This case involves sexual assault, battery, rape, sexual abuse, false imprisonment and kidnapping.

2. Defendant Diddy has been sued by countless individuals for crimes similar to the ones enumerated in this Complaint.

3. Defendant Diddy is currently a federal inmate awaiting criminal trial for crimes similar to the ones enumerated in this Complaint.

4. Defendant KK is an employee of Defendant Diddy often referred to by Defendant Diddy as his right-hand woman.

5. Defendant Diddy's predatory behavior was constant and was well known by several individuals including Defendant Diddy's employees, staff, friends, family and associates. In fact, Defendant Diddy's sons are being sued for engaging in the same type of deviant behavior as their father as plead in a Los Angeles Superior Court filing.[1]

6. Defendant Diddy was able to effectuate his crimes and evade capture and prosecution for his crimes for almost 30 years due to his position of power and influence in the entertainment industry. Defendant Diddy exploited his position and

---

[1] Case number 24-ST-CV-08571

his relationships with powerful individuals to force sexual acts through exploitation, fear, manipulation, physical threats, emotional abuse, intimidation and retaliation.

7. Had any of the previous victims of Defendant Diddy been taken seriously, or had any of the abettors like Defendants KK, Shane, Does 1-3 or Jane Doe reported Defendant Diddy's actions to law enforcement. Defendant Diddy's illegal and unfathomable behavior could have been prevented. Instead, Defendant Diddy was able to reign his abuse and terrorism on countless victims for over 30 years.

8. Additionally, had Defendant Diddy's numerous business partners and associates not ignored Defendant Diddy's deviant behavior, Defendant Diddy would have been unable to continue his pattern of abuse over such a long period of time.

9. As alleged herein, Defendant Diddy abused his position of power in the entertainment industry to garner loyalty and trust from the public at large, and law enforcement, while instilling fear and intimidation in the hearts of his voluminous victims. Allegations against Defendant Diddy have been disregarded for decades therefore creating a failure to protect victims, like the Plaintiff named herein.

10. Unlike most victims of Defendant Diddy, who were employees, sex workers, or individuals seeking out Defendant to help launch their careers, Plaintiff does not fall into any of those categories. Plaintiff met Defendant Diddy due to happenstance and still ended up being brutally victimized, in a similar manner as described by the others who have proceeded her filing and others who surely will follow after her filing.

11. Due to Defendants agreement to participate in a corrupt enterprise, Plaintiff and countless other victims have been immeasurably and permanently harmed. Plaintiff alleges as follows upon personal knowledge as to themselves and their own acts and experience, and, as to all other matters, upon information and belief, including investigations conducted by their attorneys.

## PARTIES

12. Plaintiff Ashley Parham is an individual who resides in and is domiciled in California.

13. Defendant Sean Combs (Defendant "Diddy") is an individual who resides in and is domiciled in California. Defendant also owns a residence in Florida.

14. Defendant Kristina Khorram (Defendant "KK") is an individual who, upon information and belief, resides in and is domiciled in California.

15. Defendant Shane Pearce (Defendant "Shane") is an individual who resides in and is domiciled in California.

16. Defendant John Does 1-3 (Defendant "Does 1-3") are individuals who, upon information and belief, reside in and are domiciled in California.

17. Defendant Jane Doe (Defendant "Jane Doe") is an individual who, upon information and belief, resides in and domiciled in California.

## JURISDICTION, VENUE, TIMELINESS AND CALIFORNIA'S SEXUAL ABUSE AND COVER-UP ACCOUNTABILITY ACT

18. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367 for the State law claims alleged.

19. This Court has personal jurisdiction over all Defendants because they have purposely availed themselves, are residents of the State and/or were conducting business in California and this lawsuit arises out of acts that occurred in California and relates to their contacts with California. Further, the pervasive culture of abuse, including sexual assault, rape, inappropriate touching and wielding power and control over Plaintiff was a constant presence when Defendant Diddy and the other herein named Defendants engaged in the acts described herein. The location of all events herein alleged occurred within the jurisdiction of California.

20. Plaintiff was harmed and injured in California by Defendants.

21. Venue is proper in this judicial district under 28 U.S.C. § 1391, (b)–(c). Further, venue is proper in this judicial district pursuant to 18 U.S.C. §1965.

22. This action is timely under Federal Racketeering Influenced and Corrupt Organization Act (RICO), 18 U.S.C. 1961 *et seq.*, as the Diddy Sexual Abuse and Cover Up Enterprise fraudulently concealed the ongoing sexual and deceitful activity, torts and conspiracy taking place within the Diddy Sexual Abuse and Cover Up and Enterprise.

23. This action is also timely under California's Sexual Abuse and Cover Up Accountability Act. California's Sexual Abuse and Cover Up Accountability Act (AB-2777) amended California Civil Procedure Section 340.16, extending the statute of limitations, opening up revival windows for adult survivors of sexual assault and related claims and acknowledging that a "two-year statute of limitations simply does not provide sexual assault survivors adequate time to heal from the

physical and emotional trauma of a sexual assault and prepare for a civil case."

California Bill Analysis, A.B. 2777 Assem., 6/14/2022.

> (g) When the perpetrator is someone a victim trusts, it can take years for the victim even to identify what happened to them as a sexual assault.
>
> (h) For these reasons, it is self-evident that the unique nature of the emotional and psychological consequences of sexual assault, especially on women, can paradoxically permit wrongdoers to escape civil 26 accountability unless statutes of limitation are crafted to prevent this injustice from occurring.
>
> (i) Moreover, when these data are combined with widespread news reports of major companies being accused of covering up sexual assaults by their employees it is self-evident that statutes of limitation for sexual assault need to be crafted in a way that does not cause the covering-up company to enjoy the fruits of their cover-up solely because our statutes of limitation permit, and thus motivate, such behavior.

Section 340.16(Sec. 2)(g–i).

24. Defendants' fraudulent concealment through active attempts of cover up caused the ongoing trauma Plaintiff suffers. Plaintiff had repressed her experience until recently when Defendant Diddy was accused by his ex-girlfriend, former employee Cassie Ventura, and others regarding their experiences with Defendant Diddy. Accessing the civil justice system allows victim-survivors an opportunity to seek accountability for the years of suffering caused by the abuse they experienced and a chance to take back the power they lost as a result of the sexual assault.

25. Additionally, any statute of limitations applicable to the below claims, if any, is tolled and Defendants are estopped from raising such a defense as their actions described below deprived Plaintiff of the opportunity to commence this lawsuit before now, as well as other equitable and legal bases.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

26. Plaintiff met Defendant Shane in February 2018, after an altercation with another man at a bar and Defendant Shane came to Plaintiff's rescue.

27. While outside the bar, with friends and other patrons, Defendant Shane Facetime video called Defendant Diddy and was showing people Defendant Diddy in the video on his phone, attempting to impress the people with his famous friend.

28. Defendant Shane then showed Plaintiff Defendant Diddy on his video call, which Plaintiff ignored, stating she was not impressed by him knowing Defendant Diddy because she believed Defendant Diddy had something to do with the murder of rapper Tupac Shakur.

29. Visible in the Facetime call was Defendant Diddy, and some of his children including his sons Christian and Quincy. It appeared from the Plaintiff's perspective Defendant Diddy was having a "get together" at his home during the time of the Facetime call with Defendant Shane.

30. Defendant Diddy heard Plaintiff's statement and made a remark that Plaintiff would "pay" for her statement regarding Tupac and overall dismissal of Defendant Diddy.

31. On March 23, 2018, Defendant Shane invited Plaintiff over to his home to assist him with his cancer medications because he stated he was weak and unable to open his medications.

32.  Upon Plaintiff's arrival, Defendant Shane informed Plaintiff that he wanted to give her a ride in his new car. Plaintiff and Defendant Shane left his residence for a brief period and then returned.

33. Once they returned, Defendant Shane left the door to his apartment partially open and stated that the door was ajar because there was an issue with the door where it couldn't close completely.

34. Defendant Shane was renting an apartment on the lower floor of a home in Orinda, California.

35. Defendant Shane had a separate entrance into his residence that led to the backyard of the home. The home also had a main entrance on Loma Vista Drive.

36. Defendant Shane rented the home from a woman who lived in the upstairs portion of the home and had two dogs who resided with her.

37. Plaintiff and Defendant Shane then began to watch a movie and Defendant Shane offered her a glass of water, which he retrieved and brought back to Plaintiff.

38. Approximately ten minutes after Plaintiff and Defendant Shane returned from their drive, Defendant Diddy entered Defendant Shane's residence.

39. Defendant Diddy entered the home in a grand "ready to party" manner. His grandiose entrance was so loud that the dogs upstairs began barking.

40. Defendant Diddy did not enter the home through the backyard entrance but instead through the main entrance.

41. Along with Defendant Diddy were his bodyguard, Defendant Doe 1, a woman who Plaintiff later identified as Defendant KK, another woman-small skinny build, early 30's with blonde mid-length hair who Plaintiff has still been unable to identify, Jane Doe, Defendant Doe 2 who upon information and belief is a friend of Defendants Shane and Diddy and Defendant Diddy's driver, Doe 3, who remained outside and in his vehicle during the duration of Plaintiff's assault.

42. Plaintiff believes Defendant Shane invited her over to "set her up" to be assaulted by Defendant Diddy because of the statement she made about Defendant Diddy a month prior.

43. Upon Defendant Diddy's arrival he immediately began to antagonize the Plaintiff stating that "she thought she would never see him in person," "pay" for her statements about Tupac during the videocall and that Defendant Diddy "caught" Plaintiff.

44. Plaintiff was in shock as she never believed that she would ever see or meet Defendant Diddy in real life let alone in the small apartment rented by Defendant Shane.

45. Defendant Diddy then began advancing towards where Plaintiff was sitting on Defendant Shane's bed with a knife and held it to the right side of Plaintiff's face and threatened to give her a "Glasgow smile" in retaliation for her previous statements on the video call.

46. Defendant KK told Defendant Diddy that she did not think giving Plaintiff a "Glasgow smile" would be advantageous to their potential clients who they could "sell" Plaintiff for sex to.

47. Defendant KK then made a threat to Plaintiff that they could ship her off anywhere in the world and that she would never see her family or anyone she knew ever again.

48. Defendant Shane then partially undressed Plaintiff then Defendant Diddy removed the remainder of Plaintiff's clothing, removing the knife from her face and then retrieved a bottle of liquid from a large fanny pack.

49. Defendant Diddy then squirted a bottle of liquid on Plaintiff which placed her in fear that she was being squirted with a chemical substance like acid. Plaintiff soon realized the substance was an oil/lubricant. Plaintiff was squirted with this liquid substance over the entirety of her naked body.

50. Defendant KK was then told by Defendant Diddy to insert, what looked like a "syringe" from sterile packaging, into Plaintiff's vagina.

51. Defendant KK did as told and then told Defendant Diddy that she was unable to use the "IUD" because it had prematurely been released from its packaging.

52. Defendant Diddy, upset by this, took the "syringe" from Defendant KK and tried inserting it in Plaintiff's vagina instead.

53. Defendant KK and Diddy began to argue as Defendant KK continued to advise Defendant Diddy that since the "IUD" had prematurely been released from its

packaging it was no way they could insert it into Plaintiff's vagina effectively. After some time, Defendant Diddy heeded the advice of Defendant KK and removed the syringe from Plaintiff's vagina and handed it to Defendant KK.

54. Defendants KK and Jane Doe then exited Defendant Shane's residence leaving Plaintiff alone with Defendants Diddy, Shane and Does 1 and 2.

55. Defendant Diddy then picked up a television remote that was near Plaintiff and violently inserted it into Plaintiff's vagina.

56. Defendant Diddy, while violently raping Plaintiff with a television remote, told Plaintiff that her life was in his hands and that if he wanted he could "take her" and she would never be seen again.

57. Plaintiff began hysterically crying from the threats by Defendant Diddy along with the pain of being violently vaginally raped by Defendant Diddy with the television remote as well as the lingering pain from the ordeal with the "IUD" syringe insertion.

58. Defendant Diddy, then instructed Defendant Shane to turn Plaintiff on her stomach seemingly tired of hearing the Plaintiff's blood curdling cries.

59. Defendant Shane then grabbed Plaintiff by her abdomen and hips and turned Plaintiff on her stomach. Defendant Diddy then instructed Defendant Shane to put a pillow over her head because he didn't want to see her face or hear her cries and instructed Defendant Shane to anally rape Plaintiff.

60. Defendant Shane did as he was told by Defendant Diddy and began to anally rape Plaintiff.

61. Defendant Diddy then violently raped Plaintiff anally after Defendant Shane.

62. Defendant Doe 2 then joined Defendants Diddy and Shane taking a turn anally raping Plaintiff.

63. Immediately after Defendant Doe 2 raped Plaintiff he exited Defendant Shane's residence.

64. Defendant Diddy then instructed Defendant Doe 1 to also rape Plaintiff.

65. Instead of immediately raping Plaintiff, Defendant Doe 1 doused Plaintiff with more oil/lubricant and then jumped on top of Plaintiff's naked and oiled body treating it like a slip and slide and knocking the wind out of Plaintiff due to his enormous size.

66. Defendant Doe 1 then caught himself from sliding over Plaintiff's oiled body and off the bed, he then began raping Plaintiff vaginally.

67. While Defendant Doe 1 was raping Plaintiff, Defendant Diddy sat in a chair near the bed and began masturbating while recording Plaintiff's rape by Defendant Doe 1.

68. Another party's phone fell on the bed near Plaintiff. Plaintiff then attempted to grab the phone but it slipped out of her hands and onto the floor due to the oil/lubricant that had been doused all over her person by Defendants Diddy and Doe 1.

69. Defendant Diddy began laughing at Plaintiff's attempt to grab the phone.

70. Throughout this violent gangbang style rape Defendant Diddy made constant belittling remarks to Plaintiff including that he "owned her now."

71. Plaintiff's body was becoming more and more limp over the course of the violent rape until eventually she had no control over her body nor could she move her body.

72. When Defendant Doe 1 finished raping Plaintiff, Defendant KK entered the room to examine the condition of Plaintiff who was barely able to move or control her bodily functions.

73. Defendant KK examined Plaintiff to see if she needed assistance and was about to give Plaintiff an IV fluid. Plaintiff cannot be certain is she did or did not receive such intravenous intervention. Defendant KK then opened a different bag, different than the one Defendant Diddy removed the oil from, where Plaintiff observed several medicine bottles, IV fluid bags and other unidentifiable powder-like drugs. Defendant KK then removed a pill from one of the medicine bottles and gave it to Defendant Diddy.

74. Defendant Diddy then inserted the pill into Plaintiff's mouth and down her throat to where Plaintiff had no choice but to ingest the unknown pill.

75. Defendants Diddy, Shane, KK and Doe 1 then exited the residence to the backyard where they smoked marijuana and cigarettes.

76. Plaintiff remained in an almost lifeless state in Defendant Shane's bedroom until she finally regained her bodily functions.

77. Plaintiff then began looking for her clothes and her purse, that contained her car keys and cell phone, but could not discover them in the room or anywhere in the apartment. Plaintiff was only able to find a t-shirt on the floor which she put on to cover her naked body. Plaintiff also observed a black condom wrapper on the floor of the bedroom which she assumed was used by one of the Defendants, most likely Defendant Diddy, during the rape.

78. Plaintiff then grabbed a knife from the kitchen and headed to the backyard where the Defendants were smoking as that was the only way to exit the premises onto the street.

79. Plaintiff concealed the knife on her left side as she exited the apartment to the backyard area.

80. Upon coming to the exit of the home which led to the backyard, Plaintiff was met by Defendant Doe 1 who was standing at the door between the residence and the backyard.

81. By the time Plaintiff was able to compose herself and come to the backyard, Defendant KK was no longer in the backyard but upstairs on the patio/balcony with Defendant Jane Doe.

82. Defendant Doe 1 allowed Plaintiff to walk to the backyard where Defendants Shane and Diddy were still smoking.

83. Defendant Doe 1 did not see the knife that Plaintiff concealed on her left side as it was obstructed by the oversize t-shirt Plaintiff was wearing.

84. Plaintiff observed Defendant Diddy still partially nude from the assault while Defendants Shane and Doe 1 had on their clothing.

85. Defendant Shane then left to the upstairs portion of the patio/balcony where Defendants KK and Jane Doe were already situated.

86. Plaintiff then sat down on a makeshift seat in the backyard when Defendant Diddy noticed her presence and remarked that he was surprised she was able to walk because he had given her "enough drugs to take out a horse."

87. Plaintiff then asked Defendant Diddy what he gave her and he laughed and did not provide a response.

88. Defendant Diddy then made further comments to Plaintiff in a jovial, friendly, manner asking her why they hadn't "partied" together before because it was "so much fun" and he "hadn't had any ass that tight in a while."

89. Defendant Doe 1 then quipped at Defendant Diddy that he probably hadn't had any "ass that tight" because he's not used to having anal sex with women, which Defendants Diddy and Doe 1 laughed at.

90. Plaintiff then told Defendant Diddy she did not party with him and she did not enjoy partying with him and that he raped her.

91. Defendant Diddy did not like Plaintiff's response to his lighthearted commentary and offered Plaintiff money and instructed Plaintiff to say that the violent rape was consensual and that Plaintiff was a sex worker.

92. Plaintiff became enraged and yelled at Defendant Diddy that her rape was not consensual, she was not a sex worker and she refused to take any money from him and would tell the police that he had raped her.

93. Defendant Diddy then told Plaintiff no one would ever believe she had been raped by him and if she did tell anyone such that they would harm her family.

94. Defendant Doe 1 then showed Plaintiff his phone which looked as if it was the outside of Plaintiff's, estranged, sister's residence as she could see her sister sitting on the couch and her sister's spouse on the balcony. It looked as if someone was outside the residence streaming this video to Defendant Doe 1's phone.

95. Plaintiff, while rattled by what she was seeing on Defendant Doe 1's phone, was still angry about being gang raped and was not complying with Defendant Diddy's request to take the money being offered to say the rape was consensual.

96. Defendant Diddy then called his mother in an effort to further convince Plaintiff not to report her assault. Defendant Diddy's mother yelled at Plaintiff to not hurt her son. Plaintiff told Defendant Diddy's mother that her son had violently raped Plaintiff. Defendant Diddy's mother, seemingly unphased by the statement, then continued her demands with Plaintiff to take the money being offered and not report the rape to law enforcement.

97. Defendant Diddy then made further threats that he had gotten off from bigger crimes than this and referred to Tupac again further antagonizing Plaintiff.

98. Defendant Doe 1 then turned to Defendant Diddy and pulled his gun on him asking him to repeat what he said in reference to Tupac.

99. As the two of them were exchanging words Plaintiff went behind Defendant Doe 1 where he seemingly began to protect Plaintiff.

100.      Defendant Doe 1 then advanced to Defendant Diddy questioning him over the comments he made about Tupac.

101.      During this commotion, a neighbor directly across the street, came outside and peered into the backyard and asked what all the commotion was about. Defendant Doe 1 then pointed the gun at the neighbor and instructed him to mind his business and return to his residence.

102.      Defendant Doe 1 then turned the gun back on Defendant Diddy. Plaintiff, not far behind Defendant Doe 1, tried to grab Defendant Doe 1's hand that had the gun. The gun then went off and hit a hill behind Defendant Shane's residence.

103.      Defendant Diddy then ran up the back stone stairs, near the hill in the backyard, towards where Defendants KK, Shane and Jane Doe were. Plaintiff charged towards Defendant Diddy moving the concealed knife from her left hand to her right hand and in pursuit of Defendant Diddy.

104.    Plaintiff then pushed Defendant Diddy from behind, while on the stone stairs

outside, causing him to fall with his back to Plaintiff.

105.    Plaintiff then raised the knife, in a rage from the events that just transpired

and with the intent of driving the knife into Defendant Diddy's back, when he

turned around and began pleading for his life.

106.    Plaintiff, shocked now to see Defendant Diddy acting as a victim had a

moment of clarity and then turned and ran down the outdoor stone staircase back out

to the backyard to escape.

107.    Defendant Diddy then chased Plaintiff down the stairs and attempted to push

her but she was already at the bottom of the stairs and gained her footing and

wielded the knife at Defendant Diddy grazing his abdomen.

108.    Hearing the commotion, Defendants KK and Jane Doe emerged and

Defendant KK then began administering first aid to Defendant Diddy for the injuries

caused by Plaintiff.

109.    Plaintiff, tried to make quick dash for the exit but it was thwarted by

Defendant Doe 1. After a period of time, Plaintiff was able to abscond from

Defendant Doe 1 due to the first aid commotion with Defendant Diddy and was able

to run down the street.

110.    Once Plaintiff made it on to the street she began yelling loudly for someone

to call the police.

111.      Defendant Doe 1, who had now caught up with Plaintiff, advised Plaintiff

that he was an undercover cop. To this day Plaintiff is unsure of the truth or falsity

of that statement.

112.      The same neighbor then again emerged from his residence asking what was

transpiring. Just as Plaintiff was attempting to answer, gun shots began being fired

in Plaintiff's direction.

113.      Plaintiff fled to a car near where the neighbor was also taking cover and lost

sight of Defendant Doe 1.

114.      Plaintiff then heard a SUV screeching and speeding leaving the residence.

115.      Plaintiff then entered the home of the neighbor who informed her that he had

already called police.

116.      Plaintiff informed the neighbor that it was Sean Combs who had raped her

and shot at them but the neighbor was unaware who Defendant Diddy was.

117.      Shortly thereafter a Sheriff from the Contra Costa Sheriff's Department

arrived at the neighbor's home.

118.      Plaintiff told the Sheriff she had been violently gang raped by Defendant

Diddy and others and that she did not have her clothes, phone, purse, car keys or cell

phone.

119.      The Sheriff told Plaintiff and the neighbor that they had received several

noise complaints prior to the neighbor's call and instructed Plaintiff to find a way to

get home. The Sheriff did not offer to take Plaintiff home, nor did he call for

emergency services including an ambulance, nor any offer to take Plaintiff to the

hospital, nor any offer to help Plaintiff recover her clothes or effects from Defendant

Shane's residence.

120.     The neighbor offered to let Plaintiff sleep on his couch until she could figure

out a way to get her possessions and get home, but Plaintiff declined and only

remained at the neighbor's residence for a short period of time once the Sheriff left.

121.     Plaintiff then went back to Defendant Shane's residence where she found the

door open and her clothes were readily accessible in his residence.

122.     Defendant Shane then emerged as if nothing had transpired and offered for

Plaintiff to stay at his residence while she "slept it off."

123.     Plaintiff asked for her purse and her keys but Defendant Shane told her she

shouldn't leave in her condition and Plaintiff, catatonic and in the state of shock and

disbelief of the events that transpired, stayed at Defendant Shane's home while

Defendant Shane left the home.

124.     Later that morning, Defendant Shane returned to the residence and woke

Plaintiff up and finally gave her back her purse, cell phone and keys and Plaintiff

left Defendant's residence.

125.     In a daze, Plaintiff returned home and tried to make sense out of what

happened to her.

126.　　On March 26, 2018, Plaintiff contacted her primary care doctor and asked for an HIV and STD test in fear of possibly having contracted a disease from her violent rape.

127.　　Plaintiff tried to continue her life as she felt she wouldn't be believed as Plaintiff already had told Contra Costa Sheriffs Defendant Diddy raped her to no avail. Further, Plaintiff was under the impression if she did continue to say Defendant Diddy's name in relation to her assault she would not be believed and her family would be in danger.

128.　　Seemingly mere days, maybe even the day before Plaintiff's vicious rape, Defendant Shane had miraculously began driving a new car. Plaintiff believes this was payment by Defendant Diddy for setting up Plaintiff to be raped.

129.　　A few weeks later, in April 2018, Plaintiff, still in pain and reeling from the horrific assault went to the hospital as her injuries had not subsided from the assault.

130.　　The hospital conducted several tests on Plaintiff including a rape kit, ultrasound and x-rays. Additionally, Plaintiff was given IV fluids to stabilize her vitals as she was in a severe weakened state from being unable to eat and losing a substantial amount of weight since the rape occurred.

131.　　While at the hospital, Plaintiff told members of her treatment team about her horrific assault and they then contacted the Walnut Creek Police.

132.     Walnut Creek Police showed up to Plaintiff's hospital room and took a

statement regarding her assault on March 23rd. Plaintiff had already told Contra

Costa Sheriff's about her rape and that it was Defendant Diddy who orchestrated it

on March 23, 2018, which was ignored.  Plaintiff declined to refer to Defendant

Diddy again to Walnut Creek Police because she believed she would be ignored by

the Walnut Creek Police just as she was by the Contra Costa County Sheriff and/or

would be further harmed by Defendant Diddy if he discovered she named him to

police. Plaintiff only told Walnut Creek Police about the assault from Defendants

Shane and Doe 2.

133.     Plaintiff believes her statements made to Walnut Creek police, while at the

hospital, was captured by police body camera footage.

134.     Plaintiff further believes her statements made to the Contra Costa Sheriff, on

March 23rd immediately after the vicious assault, where Plaintiff named Defendant

Diddy directly and by name, was captured by police body camera footage.

135.     Plaintiff also filed a report to the Orinda Police Department on April 17,

2018, but again was too afraid to name Defendant Diddy as one of her assailants.

During this report Plaintiff provided her clothing to the police from the night of the

assault but they only retained her underwear. To date, the underwear was never

returned and Plaintiff believes no investigation ever commenced.

136.     Plaintiff sought assistance from therapists in May 2018, one of which tried to

have her therapy appointments covered by a victim's compensation fund which was

rejected because Plaintiff was told no law enforcement agency had opened an active investigation into any of her many reports of her violent gang rape.

137.    Subsequently thereafter, Plaintiff asked police for a copy of her report from the Walnut Creek Police Department. On July 19, 2018, Plaintiff was provided a letter from the Walnut Creek Police Department stating that it was "unable to furnish this information as it is confidential and not subject to public release" despite Plaintiff not being the public and the victim/complainant.

138.    In March 2024, Plaintiff was retraumatized by all of the events surrounding Defendant Diddy including the several civil complaints filed against him as well as the raid on Defendant Diddy's California and Florida residences.

139.    Plaintiff called Contra Costa Sheriff's again in hopes of renewing her previous complaint and amending it to ensure Defendant Diddy's name was included. Plaintiff received no response from the Sheriff.

140.    Plaintiff, in July 2024, then emailed the Chief of the Sheriff's office regarding her complaint, lack of investigation and how she was treated by the initial responding officer. Plaintiff, then later received a call back from a Detective but then nothing further.

141.    Plaintiff then began seeking legal counsel for her claims ultimately being referred to undersign for representation.

142.    Undersign counsel also attempted to get a copy of the 2018 police report from Contra Costa Sheriff's but was told that they would not provide the report or any other information without a subpoena.

**FIRST CAUSE OF ACTION**
**VIOLATION OF 18 U.S.C. §§ 1962(c), 1964(c) – RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)**
*(Against All Defendants)*

143.    Plaintiffs incorporate by reference and reallege each of the preceding paragraphs and all paragraphs below as though fully set forth and brought in this cause of action.

144.    Defendants, as well as others known and unknown, are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the Diddy Sexual Abuse and Cover Up Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

145.    The Diddy Sexual Abuse and Cover Up Enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4) consisting of: (i) Defendants, including each of their employees and agents; and (ii) the Diddy Sexual Abuse and Cover Up Enterprise Participants, including but not limited to the Defendants enumerated herein.

146.    As set forth above, the Diddy Sexual Abuse and Cover Up Enterprise was designed and used as a tool to enable Defendant Diddy and the Diddy Sexual Abuse and Cover Up Enterprise Participants to participate in a pattern of racketeering activity.

147.     Section 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of suit, including a reasonable attorney's fee." 18 U.S.C. § 1964.

148.     The Diddy Sexual Abuse and Cover Up Enterprise falls within the meaning of 18 U.S.C. § 1961(4) and consists of a group of "persons" associated together for the common purpose of: (i) endorsing and facilitating Diddy's sexual harassment, assault and abuse of others, including Plaintiff, (ii) threatening and misleading Defendant Diddy's victims to prevent the reporting, disclosure, or prosecution of his sexual acts, and (iii) intervening in Plaintiff's efforts to report by concealing and refusing to report Defemdant Diddy's sexual offenses to the appropriate authorities, including law enforcement.

149.      Defendants have conducted and participated in the affairs of the Diddy Sexual Abuse and Cover Up Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1961(5), which includes multiple instances of obtaining a victim for the purpose of committing or attempting to commit aggravated sexual abuse in violation of 18 U.S.C. §§ 1590 as described above, facilitating and financially benefitting from forced labor and sex trafficking in violation of 18 U.S.C. §§ 1589 (a), 1595(a), and instances of transporting women, specifically Plaintiff in the instant case, for the purposes of furthering the common purposes of the Diddy Sexual Abuse and Cover Up Enterprise, including sexual

abuse, sexually illicit photography/videography, and other immoral purposes in violation of 18 U.S.C. § 2421, also known as the Mann Act.

150.     The Diddy Sexual Abuse and Cover Up Enterprise engaged in and affected interstate commerce, where Defendants utilized phone lines to make arrangements for Defendant Diddy to further his illicit sexual activities.

151.     Each participant in the Diddy Sexual Abuse and Cover Up Enterprise had a systemic linkage to each other participant through personal relationships and employment relationships and functioned as a continuing unit for the purpose of furthering the scheme and their common purposes.

152.     Defendants, upon information and belief, also used the internet and other electronic facilities to carry out the scheme and conceal the ongoing sexual and fraudulent activities taking place within the Diddy Sexual Abuse and Cover Up Enterprise.

153.     The wire transmissions described herein were made in furtherance of Defendants' scheme and common purpose.

154.     Defendants' scheme and the above-described racketeering activities amounted to a common course of conduct intended to cause Plaintiff and others to hide and conceal Defendant Diddy's abuse. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiff. Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to Plaintiff.

155.    The pattern of racketeering activity alleged herein and the Diddy Sexual

Abuse and Cover Up Enterprise are separate and distinct from each other.

Defendants engaged in a pattern of racketeering activity alleged herein for the

purpose of conducting the affairs of the Diddy Sexual Abuse and Cover Up

Enterprise.

156.    Defendant Diddy and the Diddy Sexual Abuse and Cover Up Enterprise

created and perpetuated a toxic culture that allowed Defendant Diddy's abuse to

flourish.

157.    Defendant Diddy had extensive power and influence on others due to his

prominent status as a mogul, his fame and notoriety.

158.    Defendant Diddy had command. Defendant Diddy had means, access and

influence to provide individuals with a career in the entertainment industry, and

other industries, through his dominate stature in the entertainment industry and

connections afforded him due to his fame and notoriety.

159.    Defendant Diddy had authority. Defendant Diddy at all times was a mogul

and billionaire who cultivated relationships with some of the most influential

individuals through his highly sought after parties and notoriety in the music

industry.

160.    Defendant Diddy had control. Defendant Diddy controlled who did what,

when and how within his circle of friends and employees including Defendants KK,

Shane, and Does. If Defendants failed to comply with covering up Defendant

Diddy's sexual abuse and assaults they would be terminated, blackballed or find themselves in legal trouble.

161.     Defendant Diddy had power. Plaintiff attempted to report that it was in fact Defendant Diddy who had assaulted her but instead was met with disregard by the Contra Costa Sheriff's Department.

162.     Defendant Diddy and the Diddy Sexual Abuse and Cover Up Enterprise were designed to manipulate, control, sexually assault and prevent individuals from coming forward.

163.     Defendants KK, Shane and Does knowingly benefited from the Diddy Sexual Abuse and Cover Up Enterprise as they retained employment benefits and other monetary benefits. Specifically, Defendant Shane mysteriously had a brand-new car, upon information and belief, provided to him by Defendant Diddy in thanks and appreciation of facilitating the sexual assault on Plaintiff.

164.     Defendants KK, Shane and Does willfully ignored the dangers of Defendant Diddy's conduct and pattern of harassment, sexual assault, abuse and misconduct solely for their own personal economic benefit.

165.     Plaintiff's reports to police were ignored. Others who complained about Defendant Diddy's egregious behavior were ignored until Cassie Ventura sued Defendant Diddy.

166.     Since Ms. Ventura's bravery, countless individuals have come forward and filed complaints regarding sexual abuse at the hands of Defendant Diddy. The chorus of victims and evidence obtained by the U.S. Attorney's Office for the

Southern District of New York ultimately led to Defendant Diddy being indicted for RICO violations and sex trafficking, among other charges.

167.    The Diddy Sexual Abuse and Cover Up Enterprise and its members protected Defendant Diddy, therefore allowing Defendant Diddy to continue with sordid and egregious sexual abuse practices, intimidated witnesses and victims from reporting Defendant Diddy's crimes and interfered with investigations concerning his abuse. Most notably, a video showing Defendant Diddy abusing Ms. Ventura was covered up and sold to him.

168.    In the instant case Defendant Diddy was aided and abetted by his network of employees including Defendant KK, Defendant Doe 1- his personal bodyguard who is unknown to Plaintiff then and now, and Defendant Doe 3- Defendant Diddy's driver who helped him escape and evade capture by police after Plaintiff's harrowing escape.

169.    Defendants KK, Shane, and Does were members of the Diddy Sexual Abuse and Cover Up Enterprise and facilitated, benefited from, had knowledge of or should have known of Defendant Diddy's sexual proclivities and predatory sexual behavior.

170.    Defendants KK, Shane, and Does assisted in Defendant Diddy's predatory sexual behavior and proclivities by setting up Plaintiff to be sexually assaulted and raped by Defendant Diddy as well as assisting in covering up the crime thereafter.

171.     Defendants KK, Shane, and Does provided Defendant Diddy with the means to effectuate his crimes, including carrying the drugs used to disable Plaintiff as well as the means to escape once Plaintiff finally regained her faculties.

172.     Plaintiff has been injured in her person by reason of these RICO violations.

173.     By reason of and as a result of Defendants' conduct in furtherance of the Diddy Abuse Enterprise and resulting RICO violations, Plaintiff has been injured in her person. As detailed above, Plaintiff has suffered direct and severe damage to her professional and personal wellbeing as a result of the assault and harassment perpetuated by and allowed by Defendants.

174.     Defendant Diddy's assault and Defendants' RICO violations have caused Plaintiff to suffer from severe emotional distress including developing an eating disorder and extreme weight loss causing several hospitalizations as well as extensive need for therapy.

175.     As a result of Defendants' actions Plaintiff has continued to experience fear and anxiety and also sought professional help on numerous occasions since the egregious assault including several hospitalizations, visits to her personal physician and therapists.

176.     Defendant Diddy's rape and assault and Defendants' RICO violations have caused Plaintiff to be fearful, distressed, anxious, degraded, and depressed. Plaintiff has gained a global distrust for individuals.

177.     If not but for Defendant Diddy's direct action and the atmosphere cultivated by him and the Defendants who were members of the Diddy Sexual Abuse and

Cover Up Enterprise, Plaintiff would not have developed several issues that have severely impact her life and livelihood. Her issues and overall health has been exacerbated by the ongoing trauma of not being believed. The damage to her person is incalculable.

178.    Plaintiff has experienced years of anxiety and depression since the violent rape and assault that occurred in 2018. Her anxiety and depression was compounded by the lack of care and complete disregard of her reports to law enforcement. Even when Plaintiff was brave enough to name Defendant Diddy to the police when called immediately after the incident she was dismissed and treated as if she was lying due to the fame and overall public support of Defendant Diddy at the time, which speaks to the wide-spread influence Defendant Diddy had over the general public at large.

179.    Plaintiff has struggled with her inability to reconcile her horrible experience with Defendant Diddy and other members of the Diddy Abuse Enterprise and their outward failure to protect women, as members included women.

180.     At all relevant times, all Defendants were aware of the essential nature and scope of the Diddy Sexual Abuse and Cover Up Enterprise and intended to participate in it.

**SECOND CAUSE OF ACTION**
**VIOLATION OF RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS ACT (RICO) — CONSPIRACY 18 U.S.C. 1962(d)**
*(Against All Defendants)*

181.    Plaintiffs incorporate by reference and reallege each of the preceding paragraphs and all paragraphs below as though fully set forth and brought in this cause of action.

182.    Each Defendant agreed to commit the substantive racketeering offense through agreeing to participate in racketeering acts.

183.    Each enterprise member agreed to commit the substantive racketeering offense through agreeing to participate in racketeering acts.

184.    Each Defendant knew the general status of the conspiracy was to enable and cover up Defendant Diddy's decades worth of sexual abuses.

185.    Each enterprise member knew the general status of the conspiracy was to enable and cover up Defendant Diddy's decades worth of sexual abuses.

186.    Each Defendant knew the conspiracy extended beyond their individual role.

187.    Each enterprise member knew the conspiracy extended beyond their individual role.

188.    As set forth above, each Defendant agreed and conspired to violate 18 U.S.C. § 1962(c).

189.    Specifically, in an effort to enable, further, protect, aid, secrete, and cover up each of Defendant Diddy's sexual assaults, Defendant Diddy's pattern and practice of sexual assault and abuse, and Defendant Diddy's sexual battery against Plaintiff, Defendants agreed to engage in each of the predicate offenses identified above.

190.     Defendants knew their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described

above constituting a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18

U.S.C. § 1962(d).

### THIRD CAUSE OF ACTION
### CIVIL CODE § 1708.5 – SEXUAL BATTERY
*(Against Defendants Diddy, Shane, Does 1-2)*

191.     Plaintiff incorporates by reference and realleges each of the preceding

paragraphs and all paragraphs below as though fully set forth and brought in this

cause of action.

192.     Defendants committed acts with the intent to cause a harmful or offensive

contact with an intimate part of Plaintiff. The sexually offensive and unwanted

contact with Plaintiff directly resulted from Defendants' said acts.

193.     Defendant Diddy exploited his position of authority to intimidate,

overwhelm, and subdue Plaintiff, with the assistance of Defendants Shane, KK and

Does 1-2. Any objections to his conduct would be met with retaliation.

194.     Defendant Diddy abused his position of power and authority over Plaintiff,

who was in no position to reject his sexual assault due to her being physically

outnumbered, unable to vacate the premises and having her clothes, purse, cell

phone and keys hidden from her.

195.     Defendants Diddy, Shane and Does 1-2 battery on Plaintiff caused physical

injury, severe mental and emotional distress, pain and suffering, mental anguish, and

loss of enjoyment of life.

196.     Defendants' unlawful actions were intentional, done with malice, and/or

showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights.

197. Plaintiff claims compensatory and punitive damages herein.

198. The amount of damages sought herein exceeds the jurisdictional limits of all other Courts which would otherwise have jurisdiction.

**FOURTH CAUSE OF ACTION**
**CALIFORNIA CIVIL CODE § 340.16 – SEXUAL ASSAULT**
*(Against Defendants Diddy, Shane, Does 1-2)*

199. Plaintiff incorporates by reference and realleges each of the preceding paragraphs and all paragraphs below as though fully set forth and brought in this cause of action.

200. Defendants touched an intimate part of Plaintiff, against her will, for sexual arousal, sexual gratification, or sexual abuse.

201. Defendants committed an act of sexual penetration against Plaintiff's will by means of force, drugging, violence, duress, menace, or fear of immediate and unlawful bodily injury to Plaintiff.

202. Defendants' conduct placed Plaintiff in reasonable apprehension of bodily harm.

203. Defendants' actions caused Plaintiff to fear retaliation in the future and there was a reasonable possibility that Defendants, specifically Defendant Diddy, could execute on a threat of retaliation.

204. Defendants' assault on Plaintiff caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

205. Defendants' unlawful actions were intentional, done with malice, and/or with a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights.

206.     Defendants conspired to and did engage in a cover up or attempted a cover

up of  previous instances or allegations of sexual assault by Defendant Diddy.

207.     Newly enacted CCP 340.16, effective January 1, 2023, is the governing

California State Statute extending the statute of limitations and granting revival of a

Plaintiff's claims seeking to recover damages suffered as a result of a sexual assault

that occurred on Plaintiff.

208.     The amount of damages sought herein exceeds the jurisdictional limits of all

other Courts which would otherwise have jurisdiction.

**FIFTH CAUSE OF ACTION**
**CALIFORNIA CIVIL CODE § 51.9 – SEXUAL HARASSMENT**
*(Against Defendants Diddy, Shane, Does 1-2)*

209.     Plaintifs incorporate by reference and reallege each of the preceding

paragraphs and all paragraphs below as though fully set forth and brought in this

cause of action.

210.     Defendants made sexual advances, solicitations, sexual requests, demands for

sexual compliance by Plaintiff, as well as engaged in other verbal, visual, or

physical conduct of a sexual nature or of a hostile nature based on Plaintiff's gender,

all of which were unwelcome and pervasive or severe.

211.     Defendants intentionally, recklessly, and wantonly acts resulted in harmful

and offensive contact with the intimate parts of Plaintiff's persons.

212.     Defendant Diddy, specifically, used his authority to coerce and exploit

Defendant Shane into luring Plaintiff to his home so that Defendant Diddy could

physically, psychologically, and/or emotionally through force, manipulation,

emotional abuse, intimidation, and retaliation abuse Plaintiff. These acts were done

for Defendant Diddy's sexual gratification.

213.     Plaintiff has suffered economic loss or disadvantage and/or personal injury,

including but not limited to, emotional distress as a result of Defendants conduct.

214.     As a result of Defendants unlawful conduct, Plaintiff is entitled to actual

damages and exemplary damages pursuant to California Civil Code section 52,

subdivision (b), in an amount to be awarded at trial.

**SIXTH CAUSE OF ACTION**
**BATTERY**
*(Against Defendants Diddy, Shane, KK, Does 1-2, Jane Doe)*

215.     Plaintiff incorporates by reference and realleges each of the preceding

paragraphs and all paragraphs below as though fully set forth and brought in this

cause of action.

216.     Defendants intended to commit and committed acts of unwanted contact with

Plaintiff.

217.     Defendants Diddy, Shane and Does 1 and 2 committed unwanted contact

with Plaintiff in a harmful and offensive manner, including but not limited to by

inflicting sexual abuse against Plaintiff.

218.     Among other batteries, Defendants Diddy, Shane and Does 1 and 2 sexually

abused Plaintiff without her consent and without equality.

219.     Defendant Diddy exploited his position and status to intimidate, overwhelm,

and subdue Plaintiff. Any objections to his conduct would be met with retaliation

not only by Plaintiff but the other Defendants involved.

220.     Defendant Diddy abused his position of power and influence over Plaintiff, who was in no position to reject his sexual advances.

221.     Defendants' batteries on Plaintiff caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

222.     Defendants' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights.

223.     Plaintiff claims compensatory and punitive damages herein.

224.     The amount of damages sought herein exceeds the jurisdictional limits of all other Courts which would otherwise have jurisdiction.

## SEVENTH CAUSE OF ACTION
### ASSAULT
*(Against Defendants Diddy, KK, Shane, Does 1-2)*

225.     Plaintiff incorporates by reference and realleges each of the preceding paragraphs and all paragraphs below as though fully set forth and brought in this cause of action.

226.     Defendants intentionally attempted, threatened, and committed harmful and offensive contacts against Plaintiff, including but not limited to inflicting sexual abuse and physical abuse against Plaintiff.

227.     Defendants' conduct placed Plaintiff in reasonable apprehension of bodily harm.

228.     Defendants' assaults on Plaintiff caused physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

229.      Defendants' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights.

230.      Plaintiff claims compensatory and punitive damages herein.

231.      The amount of damages sought herein exceeds the jurisdictional limits of all other Courts which would otherwise have jurisdiction.

### EIGHTH CAUSE OF ACTION
### NEGLIGENCE
*(Defendant Shane)*

232.      Plaintiffs incorporate by reference and reallege each of the preceding and all paragraphs below as though fully set forth and brought in this cause of action.

233.      Defendant Shane invited Plaintiff to his home as a guest. Defendant Shane owed Plaintiff a right to expect protection from the other Defendants, specifically Defendant Diddy, while a guest in his home.

234.      As a direct and proximate result of the foregoing negligence, Plaintiff was sexually harassed, assaulted and abused by Defendants Diddy, Shane and Does 1 and 2, causing Plaintiff bodily injuries, pain and suffering, mental anguish, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing, and Plaintiff will suffer losses in the future.

### NINTH CAUSE OF ACTION
### NEGLIGENT FAILURE TO WARN
*(Defendants Shane, KK, Does, Jane Doe)*

235.      Plaintiffs incorporate by reference and reallege each of the preceding and all paragraphs below as though fully set forth and brought in this cause of action.

236.      Defendants conduct created a risk of physical or emotional harm to Plaintiff.

237.     Defendants knew and had reason to know that Plaintiff was at risk of sexual

assault and abuse by Defendant Diddy.

238.     Despite the knowledge of the danger in the participation in the Diddy Sexual

Abuse and Cover Up Enterprise, Defendants did not alert Plaintiff to the risk of

sexual assault, harassment, kidnapping, physical assault, rape, and/or other attacks

by Defendant Diddy. In fact, Defendants facilitated and assisted Defendant Diddy in

his illegal deviant activities and despicable behavior.

239.     Defendant Shane, specifically represented to Plaintiff that she would be safe

while a guest in his home and would be free of risk of attack.

240.     Defendants, specifically Defendant Shane, had reason to know that Plaintiff

would be unaware of the risk of sexual assault, harassment, kidnapping, physical

assault, rape, and/or other attacks by being a guest in Defendant's home or his

association with Defendant Diddy and the Diddy Sexual Abuse and Cover Up

Enterprise.

241.     A warning to Plaintiff by any Defendant that she was at risk of sexual assault,

harassment, kidnapping, physical assault, rape, and/or other attacks by Defendant

Diddy or any other Defendant would have reduced the risk of harm to Plaintiff, who

could have taken safety precautions and avoided being a guest in Defendant Shane's

home and completely avoided the assault and attack Plaintiff suffered.

242.      As a legal and direct result of the aforementioned conduct and omission of

Defendants, Plaintiff was sexually assaulted, harassed, kidnapped, physically

assaulted, raped, and/or otherwise attacked and robbed of her dignity and personal

safety. The depraved attacks on Plaintiff caused Plaintiff to suffer serious

psychological and physical harm from which she may never fully recover.

243.     As a direct and legal result of Defendants' Failure to Warn, Plaintiff suffered

damages, both economic and general, non-economic damages according to proof.

### TENTH CAUSE OF ACTION
### NEGLIGENT SUPERVISION AND RETENTION
*(Against Defendant Diddy)*

244.     Plaintiffs incorporate by reference and reallege each of the preceding

paragraphs and all paragraphs below as though fully set forth and brought in this

cause of action.

245.     At all times material, Defendants KK, Does 1 and 3 and Jane Doe were

employed by Defendant Diddy (under the control and authority of Defendant

Diddy).

246.     Defendants KK, Does 1 and 3 and Jane Doe were unfit or incompetent and

posed a particular risk of sexually harassing, assaulting, and or mentally abusing

Plaintiff.

247.     Defendant Diddy knew or should have known not only that Defendants KK,

Does 1 and 3 and Jane Doe were unfit or incompetent and posed a particular risk of

sexually harassing, assaulting, and or mentally abusing Plaintiff, but also that this

unfitness created a particular risk to Plaintiff.

248.     Defendants KK, Does 1and 3 and Jane Doe unfitness and particular risk to

Plaintiff harmed Plaintiff.

249.     Defendant Diddy knew or should have known that Defendant Doe 1 had previously engaged and was continuing to engage in unlawful sexual conduct for his own personal sexual gratification.

250.     Defendant Diddy knew or should have known that it was foreseeable that Defendant Doe 1 was engaging, or would engage, in illicit sexual activities with Plaintiff under the cloak of the authority, confidence, and trust, bestowed upon him through Defendant Diddy.

251.     At no time during the alleged period did Defendant Diddy have in place a reasonable system or procedure to investigate, supervise and monitor Defendant Doe 1 to prevent sexual and verbal abuse, sexual assault, nor did he implement a system or procedure to oversee or monitor conduct towards individuals they encountered.

252.     Defendant Diddy conspired to and did breach his duties of care owed to Plaintiff, including by turning a blind eye and encouraging known abuses by Defendant Doe 1 and the known dangerous conditions of the Diddy Sexual Enterprise and by continuing to expose individuals, like the Plaintiff, to these dangers for decades.

253.     Even though Defendant Diddy knew or should have known of these sexually illicit activities by himself and Defendant Doe 1, he failed to use reasonable care in supervising Defendant Doe 1 and did nothing to reasonably investigate, supervise or monitor Defendant Doe 1 to ensure the safety of individuals they encountered.

254.     Defendant Diddy's negligence in supervising and or retaining Defendant Doe 1 was a substantial factor in causing harm to Plaintiff.

255.     As a result of the above-described conduct, Plaintiff has expended significant costs on therapy and suffered damages including deprivation of income and benefits, loss of employment opportunities, severe physical and emotional distress, pain and suffering, mental anguish, humiliation, loss of enjoyment of life, and damage to her reputation and career.

256.     Plaintiff claims compensatory and punitive damages herein.

257.     The amount of damages sought herein exceeds the jurisdictional limits of all other Courts which would otherwise have jurisdiction.

## ELEVENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

258.     Plaintiffs incorporate by reference and reallege each of the preceding paragraphs and all paragraphs below as though fully set forth and brought in this cause of action.

259.     Defendants conspired to and did engage in conduct that was extreme and outrageous and intentionally caused severe emotional distress to Plaintiff.

260.     Defendants' conduct exceeded all possible bounds of decency.

261.     Defendants acted with the intent and knowledge that Plaintiff suffered emotional distress due to their inexcusable and outrageous conduct.

262.     Defendants' conduct caused Plaintiffs to suffer physical injury, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

263.     Defendants' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights.

264.     Plaintiff claims compensatory and punitive damages herein.

265.     The amount of damages sought herein exceeds the jurisdictional limits of all other Courts which would otherwise have jurisdiction.

**TWELFTH CAUSE OF ACTION**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
*(Against All Defendants)*

266.     Plaintiffs incorporate by reference and reallege each of the preceding paragraphs and all paragraphs below as though fully set forth and brought in this cause of action.

267.     Defendants were negligent by both conspiring to and each breaching the duty of care they owed to Plaintiff to keep her safe and by breaching their duty to properly supervise and control Defendants within the Diddy Sexual Abuse and Cover Up Enterprise.

268.     Plaintiff suffered physical injuries, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

269.     Defendants' negligence were a substantial factor in causing Plaintiff to suffer physical injuries, severe mental and emotional distress, pain and suffering, mental anguish, and loss of enjoyment of life.

**THIRTEENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
*(Against Defendants Shane, KK, Does 1-3, Jane Doe)*

270.    Plaintiffs incorporate by reference and reallege each of the preceding

paragraphs and all paragraphs below as though fully set forth and brought in this

cause of action.

271.    Defendant Shane received significant revenue, specifically a new car, for his

betrayal and his involvement in Plaintiff's assault and his role in the Diddy Sexual

Abuse and Cover Up Enterprise.

272.    Other Defendants named herein received significant revenue for their

involvement in Plaintiff's assault and their roles in the Diddy Sexual Abuse and

Cover Up Enterprise.

273.    Defendants appreciate and have knowledge of such benefits and retain them

to this day.

274.     Under principles of equity and good conscience, Defendants should not be

permitted to retain the profit they received and retained at Plaintiff's expense while

refusing to provide compensation for the injuries suffered by Plaintiffs as a result of

their unlawful conduct, including their failure to guard against, educate as to, or

otherwise failure to prevent such injuries inflicted on Plaintiff.

275.    Under principles of equity and good conscience, Defendants should not be

permitted to retain the profit they received and retained at Plaintiff's expense while

refusing to provide compensation for the injuries suffered by Plaintiff as a result of

their unlawful conduct as members of the Diddy Sexual Abuse and Cover Up Enterprise.

276.     Plaintiff seeks restitution and/or disgorgement of all monies Defendants have unjustly received and retained as a result of their unlawful conduct and participation in the Diddy Sexual Abuse and Cover Up Enterprise alleged herein.

**FOURTEENTH CAUSE OF ACTION**
**AIDING AND ABETTING**
*(Against Defendants Shane, KK, Does 1-3, Jane Doe)*

277.     Plaintiffs incorporate by reference and reallege each of the preceding paragraphs and all paragraphs below as though fully set forth and brought in this cause of action.

278.     Defendants knew that an assault/battery/sexual assault was being committed and was going to be committed against Plaintiff because of Defendants involvement in the Diddy Sexual Abuse and Cover Up Enterprise.

279.     Defendants provided drugs to be used to take advantage of Plaintiff without the knowledge or consent of Plaintiff.

280.     Defendants knew Plaintiff had been and would be assaulted because of their involvement in the Diddy Sexual Abuse and Cover Up Enterprise.

281.     Defendants' conduct was a substantial factor in causing harm to Plaintiff.

282.     Through the aforementioned acts, Defendants caused Plaintiff an imminent apprehension of harmful or offensive contact with an intimate part of Plaintiff's body and sexually offensive contact with Plaintiff resulted.

283.     As a result of Defendants conduct, Plaintiff has suffered economic injury. Plaintiff's general, special, and consequential damages are in an amount to be proven at trial, but in no event is less than the minimum jurisdictional amount of this Court.

284.     As a result of Defendants above-described conduct, Plaintiff has suffered and continues to suffer great emotional distress and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life.

285.     As described in this Complaint, the Defendants conduct was done with oppression, fraud, and/or malice warranting significant damages, including punitive damages.

286.      Here, Plaintiff was sexually assaulted by Defendants Diddy, Shane and Does 1 and 2 at Defendant Shane's residence. Plaintiff was legally on the premises as a guest and invitee of Defendant Shane. Defendant Shane (through renting) the premises had dominion and control over the premises where Plaintiff was harmed. Defendant Diddy had dominion and control over the actions of Defendants Shane and Does 1 and 3 and failed to step in and stop them from sexually assaulting Plaintiff.

287.     As the owner of the property, Defendant Shane had a duty to protect Plaintiff from the harm she suffered at the hands of Defendants Diddy and Does 1 and 2 and breached his duty when he failed to stop them from sexually assaulting Plaintiff. In furtherance of this breach, Defendant Shane encouraged Defendant Diddy and Does

1 and 2 to continue their assault on Plaintiff. Plaintiff has suffered immensely because of Defendant Shane's intentional breach of his duty to her.

288.   As a result of breach of his duty, Plaintiff has suffered and continues to suffer harm, including severe emotional distress, anxiety, and other consequential damages, for which she is entitled to an award of monetary damages and other relief.

289.   Defendants conduct described above was willful, wanton, and malicious. At all relevant times, Defendants acted with conscious disregard for Plaintiff's rights and feelings, acted with the knowledge of or with reckless disregard for the fact that their conduct was certain to cause injury to Plaintiff, and intended to cause fear, physical injury and/or pain and suffering to Plaintiff. By virtue of the foregoing, Plaintiff is entitled to recover punitive damages.

## FIFTEENTH CAUSE OF ACTION
## TRAFFICKING AND VICTIMS' PROTECTION ACT
*(Against All Defendants)*

290.   Plaintiffs incorporate by reference and reallege each of the preceding paragraphs and all paragraphs below as though fully set forth and brought in this cause of action.

291.   Defendants knowingly and intentionally participated in, perpetrated, assisted, supported, and facilitated a sex trafficking venture that was in and affecting interstate and foreign commerce, together and with others, in violation of 18 U.S.C. § 1590

292.     Among other things, Defendants knowingly and intentionally recruited, enticed, provided, obtained, advertised, and solicited by various means Plaintiff, knowing that Defendants would use means of force, threats of force, fraud, coercion, and a combination of such means to cause Plaintiff to engage in nonconsensual sex acts.

293.     Defendants had actual knowledge that they were perpetrating and facilitating Defendant Diddy's sexual abuse and sex trafficking conspiracy to recruit, solicit, entice, coerce, harbor, transport, obtain, and provide Plaintiff into nonconsensual sex acts, through the means of force, threats of force, fraud, abuse of process, and coercion.

294.     Despite such knowledge, Defendants intentionally paid for, facilitated, perpetrated, and participated in Defendant Diddy's violations of 18 U.S.C. § 1590, which Defendants knew, and were in reckless disregard of the fact that Defendant Diddy would coerce, defraud, and force Plaintiff to engage in nonconsensual sex acts.

295.     Defendants' actions were in and affecting interstate and foreign commerce.

296.     By taking the concrete steps alleged in this Complaint, Defendants knowingly participated in sex trafficking and furthered the Diddy Sexual Abuse and Cover Up Enterprise. The concrete steps constituted taking part in the sex trafficking venture and were necessary for its success. The concrete steps constituted active engagement by Defendants in the Diddy Sexual Abuse and Cover

Up Enterprise. Defendants knew that its active engagement would lead to and cause coercive sex trafficking.

297.     Defendants affirmative conduct was committed knowing, and in reckless disregard of the facts, that Defendant Diddy would use his means and influence to force and intimidate Plaintiff into engaging in nonconsensual sex acts. Defendants' conduct was outrageous and intentional.

298.     Defendants knowing and intentional conduct has caused Plaintiff serious harm, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

299.     Defendants knowing and intentional conduct has caused Plaintiff harm that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing nonconsesual sexual activity, to avoid incurring further harm.

300.     Defendants criminal conduct in perpetrating TVPA violations was outrageous and intentional because it was in deliberate furtherance of a widespread and dangerous criminal sex trafficking organization. Defendants criminal conduct also evinced a high degree of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal indifference to civil obligations. Defendants criminal conduct was directed specifically at Plaintiff, who was the victim of Defendant Diddy's sexual abuse and sex trafficking.

301.     Defendants outrageous and intentional conduct in this case is part of a pattern and practice of profiting by undertaking illegal "high risk, high reward" actions.

302.     By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1590

and 1595, Defendants are liable to Plaintiff for the damages she sustained, and

reasonable attorneys' fees.

303.     By virtue of these intentional and outrageous violations of 18 U.S.C. § 1590

and 1595, Defendants are liable to Plaintiff.

### SIXTEENTH CAUSE OF ACTION
### AIDING, ABETTING, AND INDUCING A SEX-TRAFFICKING VENTURE IN VIOLATION OF THE TRAFFICKING VICTIMS' PROTECTION ACT, 18 U.S.C. §§ 1590 and 1595
*(Against Defendants KK, Shane, Does 1-3, Jane Doe)*

304.     Plaintiffs incorporate by reference and reallege each of the preceding

paragraphs and all paragraphs below as though fully set forth and brought in this

cause of action.

305.     Defendants directly committed and perpetrated violations of Chapter 77,

Title 18, U.S. Code, including 18 U.S.C. § 1590 by aiding, abetting, and inducing

the sex trafficking venture and the sex trafficking of Plaintiff. Defendants

themselves directly violated Chapter 77 by committing and perpetrating these

violations.

306.     Among other things, Defendants aided, abetted, and induced Defendant

Diddy's sex trafficking venture and sex trafficking of Plaintiff knowing that

Defendant Diddy would use means of force, threats of force, fraud, coercion, and a

combination of such means to cause Plaintiff to engage in nonconsensual sex acts.

307.     By aiding, abetting, and inducing Defendant Diddy's sex trafficking venture

and sex trafficking of Plaintiff, Defendants benefited, both financially and by

receiving things of value, from participating in the Diddy Sexual Abuse and Cover

Up Enterprise sex trafficking venture.

308.    Defendants had actual knowledge that they were aiding, abetting, and

inducing Defendant Diddy and his co-conspirators' sexual abuse and sex trafficking

conspiracy to recruit, solicit, entice, coerce, harbor, transport, obtain, and provide

Plaintiff into nonconsensual sex acts, through the means of force, threats of force,

fraud, abuse of process, and coercion. Defendants knew, and should have known,

that Defendant Diddy had engaged in acts in violation of the TVPA.

309.    Defendants knowing and intentional conduct of aiding, abetting, and

inducing Defendant Diddy's violations has caused Plaintiff serious harm including,

without limitation, physical, psychological, emotional, financial, and reputational

harm.

310.    Through their unchecked support Defendants aided, abetted, and induced

Defendant Diddy's violations and caused Plaintiff harm that is sufficiently serious,

under all the surrounding circumstances, to compel a reasonable person of the same

background and in the same circumstances to perform or to continue performing

nonconsensual sexual activity, in order to avoid incurring additional harm.

311.    Defendants' criminal conduct in aiding, abetting, and inducing Defendant

Diddy's violations of the TVPA was outrageous and intentional, because it was in

deliberate furtherance of a widespread and dangerous Diddy Sexual Abuse and

Cover Up Enterprise and criminal sex trafficking organization. Defendants' criminal

conduct also evinced a high degree of moral turpitude and demonstrated such

wanton dishonesty as to imply a criminal indifference to civil obligations. Defendants criminal conduct was directed specifically at Plaintiff, who was the victim of Defendant Diddy's sexual abuse and Cover Up sex trafficking organization.

312.     Defendants' outrageous and intentional conduct in this case is part of a pattern and practice of Defendants by profiting by undertaking illegal "high risk, high reward" partnerships.

313.     By virtue of these knowing and intentional violations of 18 U.S.C. § 1590 and 1595, Defendants are liable to Plaintiff for the damages she sustained and reasonable attorneys' fees.

314.     By virtue of these intentional and outrageous violations of 18 U.S.C. § 1590 and 1595, Defendants are liable to Plaintiff for punitive damages.

**SEVENTEENTH CAUSE OF ACTION**
**KNOWING BENEFICIARY IN A SEX-TRAFFICKING VENTURE IN VIOLATION OF THE TRAFFICKING VICTIMS' PROTECTION ACT, 18 U.S.C. §§ 1590 and 1595**
*(Against Defendants Shane, KK, Does 1-3, Jane Doe)*

315.     Plaintiffs incorporate by reference and reallege each of the preceding paragraphs and all paragraphs below as though fully set forth and brought in this cause of action.

316.     Upon information and belief, Defendants knowingly and intentionally benefitted, financially and by receiving things of value, from participating in, assisting, supporting, and facilitating an illegal coercive sex trafficking venture that

was in and affecting interstate and foreign commerce, together and with others, in violation of 18 U.S.C. § 1590.

317.     Defendants took many concrete steps to aid and participate in Diddy's Sexual Abuse and Cover Up Enterprise sex trafficking venture. Among the concrete steps that Defendants took to aid Defendant Diddy was providing victims to Defendant Diddy, like Plaintiff, as well as security, getaway driver, a private location to engage in his debaucheries and drugs used to weaken Plaintiff's defenses making the sex trafficking venture possible.

318.     Upon information and belief, Defendants roles and actions provided were necessary for Defendant Diddy to force Plaintiff to engage in nonconsensual sex acts.

319.     The financing to the Defendants in the Diddy Sexual Abuse and Cover Up Enterprise directly formed part of the commercial nature of the sex acts. Defendants thusly actively participated in the recruitment of victims of the venture.

320.     Defendants knew or should have known that they were feeding Defendant Diddy's sexual deviancy.

321.     Upon information and belief, Defendants received financial benefits from Defendant Diddy and his sex trafficking venture, most notably a new car for Defendant Shane.

322.     Defendants knew that it would gain far from routine financial benefits by participating in the Diddy Sexual Abuse and Cover Up Enterprise sex trafficking venture.

323.     By virtue of these knowing and intentional violations of 18 U.S.C. §§ 1590 and 1595, Defendants are liable to Plaintiff for the damages she sustained and reasonable attorneys' fees.

**EIGHTEENTH CAUSE OF ACTION**
**OBSTRUCTION OF THE ENFORCEMENT OF THE TRAFFICKING VICTIM PROTECTION ACT, 18 U.S.C. § 1590(b)**
*(Against Defendants Shane, KK, Does 1-3, Jane Doe)*

324.     Plaintiffs incorporate by reference and reallege each of the preceding paragraphs and all paragraphs below as though fully set forth and brought in this cause of action.

325.     Defendants knowingly and intentionally obstructed, attempted to obstruct, interfered with, and prevented the enforcement of 18 U.S.C. § 1590 all in violation of 18 U.S.C. § 1590(b). This activity is hereinafter referred to collectively simply as "obstruction."

326.     Upon information and belief, Defendants obstruction of the enforcement of 18 U.S.C. § 1590 was forbidden by 18 U.S.C. § 1590(b), thereby violating Chapter 77, Title 18. Defendants' obstruction described here and in the preceding paragraph directly, proximately, and foreseeably harmed Plaintiff by directly resulting in her being forcefully and against her will to engage in nonconsensual sex acts.

327.     Upon information and belief, Defendant Diddy has a well-documented history of criminal investigations. Defendants were on notice of Defendant Diddy's proclivity to criminal activity. They knew or should have known that Defendant Diddy's Sexual Abuse and Cover Up Enterprise sex trafficking operation would or could result in a criminal investigation by State and Federal prosecutors for

violating (among other laws) the TVPA. Defendants should have taken a que from the Federal Prosecutors arrest and prosecution of Jeffrey Epstein. The U.S. Attorney's Office for the Southern District of New York indicted Epstein (and unnamed "associates") for violating the TVPA. Later, the same Office indicted Epstein's co-conspirator, Ghislaine Maxwell, for conspiracy to entice minor victims to travel to be abused by Epstein. All named Defendants in this matter engaged in the same activities as Mr. Epstein and Ms. Maxwell. In fact, Defendants may have done worse.

328.    Upon information and belief, by concealing their actions thereafter, Defendants obstructed, interfered with, and prevented the State and Federal Government enforcement of the TVPA against Defendant Diddy to the extent that the Federal Government was able to ultimately charge Defendant Diddy with TVPA violations, the filing of those charges was delayed by Defendants actions. Because of that delay, Plaintiff was forced to engage in nonconsensual sex acts.

329.    One example of how Defendants obstructed, attempted to obstruct, interfered with, and prevented State and Federal Government's enforcement of the TVPA, Defendants provided resources to Defendant Diddy, like security, victims, drugs, getaway driver and false alibi's so that the forced sex acts would escape the detection of State and Federal law enforcement and prosecuting agencies. Defendants provided these resources to further the Diddy Sexual Abuse and Cover Up Enterprise sex trafficking venture with the purpose of helping Defendant Diddy and the other Defendants in evading criminal liability for violating the TVPA.

330.    By providing this type of support to Defendant Diddy, Defendants intended and knew that Defendant Diddy's depraved and egregiously forced sex acts would escape the detection of law enforcement and prosecuting agencies for some period of time.

331.    Defendants support furthered the Diddy Sexual Abuse and Cover Up Enterprise sex trafficking venture with the purpose of helping Defendant Diddy evade criminal liability for violating the TVPA.

332.    Upon information and belief, Defendants obstruction, attempted obstruction, interference with, and prevention of the enforcement of the TVPA were all done intentionally and knowingly. For example, Defendants knew that Defendant Diddy was high risk— specifically, high risk to violate the TVPA through continuing criminal sex trafficking activities due to his proximity to criminal activity as far back as 1991.

333.    Upon information and belief, Defendants were aware and participated and engaged in witness intimidation, and bribery to escape criminal liability. Including offering Plaintiff money to say that the sexual abuse and rape she suffered was consensual and for Plaintiff to say she was a sex worker. Defendants were fully aware that there were public allegations that Defendant Diddy's illegal conduct made through complaints in previous lawsuits. Defendants concealed information from the Federal Government in an intentional attempt to obstruct, in many ways interfered with, and prevented the enforcement of the TVPA by investigators and prosecuting agencies.

334.     Upon information and belief, Defendants relationship with Defendant Diddy went far beyond a normal (and lawful) partnership, relationship and friendship. Defendants knew, and intended, that its relationship with Defendant Diddy would go far beyond a normal relationship. Defendants knew that its decision to go beyond a normal employment and personal relationships with Defendant Diddy obstructed the ability of law enforcement and prosecuting agencies to enforce the TVPA.

335.     Upon information and belief, Defendants obstruction of the government's TVPA and other law enforcement efforts was intentional and willful and, therefore, Defendants intentionally and willfully caused Defendant Diddy's commission of the forcible sex acts with Plaintiff through its obstruction supporting the concealment of the Diddy Sexual Abuse and Cover Up Enterprise sex trafficking venture. Defendants knew that Defendant Diddy would use means of force, threats of force fraud, coercion, and a combination of such means to cause Plaintiff to engage in nonconsensual sex acts.

336.     Upon information and belief, Defendants knew, acted in reckless disregard of the fact, and should have known, that its obstruction in violation of 18 U.S.C. § 1590(b) would directly and proximately lead to unlawful and forceful sex acts by Defendant Diddy with individuals, like Plaintiff.

337.     Upon information and belief, Defendants obstruction has caused Plaintiff serious harm, including, without limitation, physical, psychological, financial, and reputational harm. That harm was directly and proximately caused by the obstruction and the harm resulting from obstruction was foreseeable.

338.    Upon information and belief, Defendants obstruction has caused Plaintiff

harm that is sufficiently serious, under all the surrounding circumstances, to compel

a reasonable person of the same background and in the same circumstances to

perform or to continue performing sexual activity to avoid incurring further harm.

339.    Upon information and belief, Defendants criminal conduct in obstructing

enforcement of the TVPA was outrageous and intentional because it was in

deliberate furtherance of a widespread and dangerous criminal sex trafficking

organization.

340.    Defendants' obstruction also evinced a high degree of moral turpitude and

demonstrated such wanton dishonesty as to imply a criminal indifference to civil

obligations. Defendants' actions were directed specifically at Plaintiff who was the

victim of the Diddy Sexual Abuse and Cover Up Enterprise sex trafficking

organization.

341.    By virtue of these violations of 18 U.S.C. § 1590(b), Defendants are liable to

Plaintiff for the damages she sustained and reasonable attorneys' fees by operation

of 18 U.S.C. § 1595. Defendants perpetrated an obstruction of the TVPA, and

therefore perpetrated a violation of Chapter 77, Title 18.

**NINETEENTH CAUSE OF ACTION**
**FALSE IMPRISONMENT**
*(Against Defendants Diddy, Shane, KK, Does 1-2, Jane Doe)*

342.    Plaintiffs incorporate by reference and reallege each of the preceding

paragraphs and all paragraphs below as though fully set forth and brought in this

cause of action.

343.     Defendants intentionally detained, and/or prevented Plaintiff from leaving the premises therefore imprisoning Plaintiff acting in deliberate malice and for the purpose of sexually assaulting and raping Plaintiff. Defendants imprisoned Plaintiff without just or reasonable cause, without lawful privilege, without Plaintiff's consent, and/or without probable cause for an appreciable amount of time; and therefore, deprived Plaintiff of her personal civil liberties. Defendants' unlawful conduct resulted in the false imprisonment of Plaintiff on March 23, 2018.

344.     Plaintiff was invited to Defendant Shane's home as a guest. Plaintiff was under the impression she was in a safe environment where only she and Defendant Shane would be present.

345.     On or about the date enumerated above, Plaintiff's clothes, phone, purse, keys and cell phone were hid and confiscated in an effort to prevent her from leaving the premises after Defendant Diddy and the other Defendants arrived at Defendant Shane's residence.

346.     Lastly, Defendant Shane's home was positioned in such a way where there was only one way to ingress and egress.

347.     Defendants forced Plaintiff, against her will and over her protest, with threats of physical violence and then forced Plaintiff to engage in nonconsensual sexual activities with Defendants Diddy, Shane and Does 1 and 2.

348.     Plaintiff was not released from her imprisonment until she made her harrowing escape as enumerated above in this Complaint.

349.     Plaintiff believes that procuring her false imprisonment was made intentionally, with actual malice, and was intended to harm Plaintiff solely for purpose of the sexual gratification of Defendant Diddy and in furtherance of the Diddy Sexual Abuse and Cover Up Enterprise .

350.     Malice is attributable to Defendant Diddy's actions as a joint tortfeasor in that he joined and facilitated the false imprisonment and maliciously instigated it. Malice is further attributable to Defendant Doe 1 as security personnel for Defendant Diddy whose actions independently based on the fact that Defendant Diddy wanted to prevent Plaintiff from being able to escape.

351.     As a legal result of Defendants' actions, Plaintiff was physically, mentally and/or emotionally injured, all to an extent and in an amount subject to proof at trial.

352.     Defendants acted with malice and with the intent to cause injury to Plaintiff or acted with a willful and conscious disregard of the rights of Plaintiff in a despicable manner. In addition, Defendants engaged in despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of her rights. Therefore, Plaintiff is entitled to an award of punitive damages for the purpose of punishing those individual Defendants to deter them and others from such conduct in the future.

353.     As a proximate result of the acts of the Defendants, Plaintiff has suffered great damage to her person, reputation and embarrassment.

354.     As an approximate results of the acts of Defendants, each of them herein alleged, Plaintiff has been and will continue to be prevented from having a normal

life. The amount of damage done to Plaintiff is still ongoing and not fully known at this time.

355.    As an additional approximate result of the acts of Defendants, Plaintiff was injured and her health, strength and activity, sustained his shocking injury to her nervous system and injury to her body, requiring several hospitalizations, treatments from therapists and other medical professionals. All of these injuries have caused Plaintiff to suffer extreme and physical severe physical pain and mental anguish. These injuries will result in some level of permanent disability to the Plaintiff.

356.    As a further proximate result of the acts of Defendants, Plaintiff was required to and did employ physicians, therapists and other medical professionals including hospitalizations for medical examinations, treatment, and care for the injuries resulting in her sexual assault and rape. Plaintiff did and will incur medical and incidental expenses for the services of all of these hospital and doctors' visits to date.

357.    The acts of Defendants, each of them herein alleged, were willful, wanton, malicious and oppressive, justifying the awarding of punitive damages.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, awarding compensatory, consequential, exemplary, punitive, restitution, unjust enrichment, equitable, and treble damages in an amount to be determined at trial; costs of suit; attorneys' fees; and such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: October 15, 2024                    Respectfully submitted,

/s/ *Shawn Perez, Esq.*

Shawn Perez, Esq.

/s/ *Ariel Mitchell, Esq.*

Ariel Mitchell, Esq.

*Attorneys for Plaintiff*