DAVID GROSSMAN (SBN 211326)
dgrossman@loeb.com
TYLER DOWNING (SBN 339537)
tdowning@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Boulevard, Suite 2200
Los Angeles, California 90067-4120
Telephone: 310-282-2000
Facsimile: 310-282-2200

Counsel for Defendant
DREW DESBORDES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ASHLEY PARHAM, JANE DOE, and JOHN DOE,

Plaintiffs,

vs.

SEAN COMBS, KRISTINA KHORRAMN, SHANE PEARCE, RUBEN VALDEZ, JOHN PELLETIER, ODELL BECKHAM JR., DREW DESBORDES, JACQUELYN WRIGHT, HELENA HARRIS-SCOTT, MATIAS GONZALEZ, BRANDI CUNNINGHAM, JANICE COMBS, KEITH LUCKS, and JOHN AND JANE DOES 1-10,

Defendants.

Case No. 3:24-CV-07191-RFL

Assigned to Hon. Rita F. Lin

**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR THE IMPOSITION OF SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL PURSUANT TO FED. R. CIV. P. 11**

Date: June 17, 2025
Time: 10:00 a.m.
Crtrm: 15

Complaint Filed: 10/15/24

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE that**, on June 17, at 10:00 a.m., or as soon thereafter as counsel may be heard in the Courtroom of the Hon. Rita F. Lynn, United States District Judge, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant DREW DESBORDES, will move for sanctions against Plaintiffs ASHLEY PARHAM, JANE DOE, JOHN DOE and their counsel of record, Ariel Mitchell and Shawn R. Perez, including dismissal of Plaintiffs' claims against Mr. Desbordes pursuant to Fed. R. Civ. P. 11.

Mr. Desbordes's motion seeks sanctions against Plaintiffs and their counsel, jointly and severally, in an amount equal to the reasonable attorneys' fees and costs Mr. Desbordes has incurred as a result of this suit, as described in the Declaration of David Grossman, in addition to terminating sanctions. Pursuant to Fed. R. Civ. P. 11(c)(2), Plaintiffs were served with a copy of Mr. Desbordes's Motion on or about April 17 2025, and were given an opportunity to withdraw their Amended Complaint. They failed to do so.

Plaintiffs and their counsel should be sanctioned in order to prevent and deter them and others from engaging in further improper litigation conduct. This Motion is based on this Notice of Motion and Motion, the Declaration of Mr. Desbordes, the Declaration of Mr. Grossman, and exhibits thereto filed herewith, any reply Mr. Desbordes may make, and any further evidence and argument as may be presented to the Court prior to or at the hearing on this Motion, or subsequent thereto as permitted by the Court.

Dated: May 9, 2025

LOEB & LOEB LLP

By: */s/ David Grossman*
David Grossman
Tyler Downing

Attorneys for Defendant Drew Desbordes

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 4

A. Mr. Desbordes Was Living And Working In Georgia At All Times Relevant To The Claims Asserted In The Amended Complaint. ........ 4

B. Plaintiff Ashley Parham's Prior Sworn Testimony Is Entirely Inconsistent With Her Counsel's Current Allegations. ........ 6

III. ARGUMENT ........ 7

1. The Claims against Mr. Desbordes are Factually Baseless ........ 8

2. Plaintiffs' Counsel Failed To Conduct A Reasonable Inquiry. ........ 10

3. Dismissal and Sanctions are Appropriate Remedies. ........ 12

IV. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Estate of Blue v. County of Los Angeles*,
120 F.3d 982 (9th Cir. 1997) .......... 7, 8

*Bus. Guides, Inc. v. Chromatic Communs. Enters.*,
498 U.S. 533 (1991) .......... 7, 8

*Carlton Grp., Ltd. v. Tobin*,
2003 U.S. Dist. LEXIS 13332 (S.D.N.Y. July 31, 2003) .......... 11

*Chapman & Cole v. Itel Container Int'l B.V.*,
865 F.2d 676 (5th Cir. 1989) .......... 12

*Christian v. Mattel, Inc.*,
286 F.3d 1118 (9th Cir. 2002) .......... 7

*Combs v. Rockwell Int'l Corp.*,
927 F.2d 486 (9th Cir. 1991) .......... 12

*Cooter & Gell v. Hartmax Corp.*,
496 U.S. 384 (1990) .......... 7

*Fabriko Acquisition Corp. v. Prokos*,
536 F.3d 605 (7th Cir. 2008) .......... 12

*Holgate v. Baldwin*,
425 F.3d 671 (9th Cir. 2005) .......... 8, 10, 11

*Homecare CRM, LLC v. Adam Group, Inc.*,
952 F. Supp. 2d 1373 (N.D. Ga. 2013) .......... 11

*Katzman v. Victoria's Secret Catalogue*,
167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd* 113 F.3d 1229 (2d Cir. 1997) .......... 12, 13

*Lake v. Gates*,
130 F.4th 1064, 2025 U.S. App. LEXIS 6015 (9th Cir. 2025) .......... 10, 11, 12

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 .......... 9

*Song Fi, Inc. v. Google, Inc.*, 2016 U.S. Dist. LEXIS 104404 (N.D. Cal. Aug. 8, 2016) .......... 8, 11, 12, 13

**Court Rules**

Fed. R. Civ. P. 11 .......... *passim*

Fed. R. Civ. P. 11(b) .......... 7

Fed. R. Civ. P. 11(c)(4) .......... 12

Federal Rules of Civil Rule 11 .......... 14

## POINTS AND AUTHORITIES IN SUPPORT OF MOTION

## I. INTRODUCTION

Plaintiff Ashley Parham, through her counsel, Ariel Mitchell and Sean Perez, filed a salacious civil lawsuit, asserting that a group of men and women brutally attacked Ms. Parham in March of 2018. Approximately six months after the complaint was first filed, Plaintiffs filed an Amended Complaint, and alleged that Drew Desbordes, a 30-year-old comedian, actor, and influencer participated in this alleged attack. These allegations are reprehensible. Plaintiffs' attorneys either deliberately fabricated these allegations, or failed to conduct even the most basic diligence, which would have revealed contemporaneous documents contradicting the allegations and showing that Mr. Desbordes was not in any way involved in the events alleged.

Sanctions should be awarded in this matter because, even after counsel for Mr. Desbordes provided Plaintiffs with reams of documents and information showing Mr. Desbordes could not have possibly participated in the events alleged, Plaintiffs have refused to withdraw the horrific—and false—allegations about Mr. Desbordes. This is a clear violation of Rule 11. Sanctions are the appropriate response to discourage future abuses of the legal system by Plaintiffs and their counsel.

In the initial complaint, Ms. Parham alleged that she met a man named Shane Pearce at a bar in February of 2018. During their initial meeting, according to Ms. Parham, Mr. Pearce was on a video call with Sean Combs (p/k/a "Diddy"). Ms. Parham claims that, after she intimated that Mr. Combs was responsible for the death of the famed rapper, Tupac Shakur, Mr. Combs became angry. Ms. Parham then alleged that, the following month, Mr. Combs and a group of others traveled to Mr. Pearce's residence in Orinda, California and violently attacked Ms. Parham, supposedly to make her "pay for her statements about Tupac during the videocall." The alleged incident, which Ms. Parham states took place on March 23, 2018,

ultimately culminated with Ms. Parham attempting to stab Mr. Combs and gunshots being fired at her.

In March of 2024, Plaintiffs, now including Jane and John Doe, filed an Amended Complaint. Now, Plaintiffs allege that the famous NFL player Odell Beckham, Jr., and Mr. Desbordes (p/k/a "Druski") also took part in the attack.[1] The allegations against Mr. Desbordes have no basis in fact; they are frivolous and objectively unreasonable. Plaintiffs and their counsel have no reasonable basis to assert any claims against Mr. Desbordes. In fact, **Plaintiffs and their counsel have been advised, repeatedly, that the absurd and outlandish claims against Mr. Desbordes are demonstrably false**.

Plaintiffs' allegations against Mr. Desbordes center on actions allegedly taken by Mr. Combs and others in Orinda, California during the week of March 18, 2018. Mr. Desbordes was nowhere near California at that time. He was twenty-three years old, living in his mother's home in Duluth, Georgia, 2,000 miles away from the site of the alleged attack. The evidence attached to the Declaration of Mr. Desbordes ("Desbordes Decl."), and provided to Plaintiffs, irrefutably establishes that Mr. Desbordes was in Georgia in March of 2018. Mr. Desbordes's phone records show that all of his calls from March 19 to March 30 originated in Georgia—including 16 calls Mr. Desbordes made or received on March 23, the day Plaintiffs allege the attack took place. Mr. Desbordes's bank statement shows he made a purchase at a gas station in Georgia on the day of the alleged attack. Employment records further show that Mr. Desbordes started a new job at a steakhouse on March 25, less than two days after he was supposedly in California purportedly attacking Ms. Parham.

---

[1] In the Amended Complaint, the Doe Plaintiffs allege that they were kidnapped from Las Vegas by another Defendant—apparently in retaliation for claims they had against the estate of the late singer, Michael Jackson—and were also taken to Orinda, California where they were brought to the same house as Ms. Parham, made to sign documents, and then ultimately given keys to a SUV and released.

Other evidence demonstrates the same basic truth: Mr. Desbordes was in Georgia in March of 2018, including the day of the alleged attack.

In fact, in March of 2018 Mr. Desbordes was not even a public figure. He had never met Mr. Combs, Mr. Beckham, or any of the other named defendants. He was working as a waiter in local restaurants with little social media presence. Mr. Desbordes certainly did not fly across the country with people he had not met, to violently attack a woman he does not know, in a town he has never been to. Yet, despite being provided with the evidence clearing Mr. Desbordes' name, Plaintiffs and their attorneys continue to assert horrific claims against him.

Even a basic factual investigation by Plaintiffs' counsel would have shown that Plaintiffs' claims against Mr. Desbordes were without basis. The police report Plaintiffs' counsel has claimed was being withheld from them in some sort of a coverup **was easily obtainable from the public record**. In it, Ms. Parham tells police she was assaulted by Mr. Pearce and one other white man on March 23, 2018. Ms. Parham herself filed that police report in court when opposing a domestic violence restraining order ("DVRO") sought against her by Mr. Pearce. And, in a statement made under penalty of perjury in the same matter, Ms. Parham largely reiterated the story she told the police in 2018: she was attacked by Mr. Pearce and one of his friends. Ms. Parham's prior sworn statements connected to a prior court proceeding are **entirely inconsistent** with the fantastical claims made against celebrities by her current counsel, Ariel Mitchell and Sean Perez.

Plaintiffs' counsel was given notice that the claims against Mr. Desbordes were factually impossible, yet they have refused to withdraw these demonstrably-false claims. Sanctions must be imposed against these attorneys for filing and maintaining this fabricated, salacious lawsuit against Mr. Desbordes without justification.[2]

---

[2] In moving for relief under Rule 11, Mr. Desbordes expressly preserves, and does not waive, all available defenses, including lack of personal jurisdiction.

## II. STATEMENT OF FACTS

In October 2024, Ms. Parham filed her initial complaint alleging that Mr. Pearce, Mr. Combs, and others, attacked her on March 23, 2018, in Orinda, California. Dkt. 1. Over five months after filing the case, Plaintiff filed an Amended Complaint—now joined by two Doe Plaintiffs—naming Mr. Desbordes as a defendant and claiming that he was one of several individuals who attacked Ms. Parham. Dkt. 18 ¶¶ 22, 76-88. The alleged assault is set out in detail in the amended complaint, which is emblazoned with a bright yellow "trigger warning" cautioning readers about the "highly graphic" nature of the allegations. *See Id.* at 1, ¶¶ 56-85.

### A. Mr. Desbordes Was Living And Working In Georgia At All Times Relevant To The Claims Asserted In The Amended Complaint.

Any suggestion that Mr. Desbordes participated in the alleged assault is verifiably false. Mr. Desbordes has, in fact, never met Ms. Parham. Declaration of Drew Desbordes ("Desbordes Decl.") ¶ 3. Nor has he been to Orinda, California. *Id*. In March 2018, Mr. Desbordes was in Georgia, thousands of miles away. *Id*. Mr. Desbordes was not a celebrity at this time. *Id.* ¶ 4.[3] Rather, he was twenty-three years old, living in his mother's home in Duluth, Georgia and was working as a waiter in local restaurants. *Id.* ¶ 4.

Mr. Desbordes's phone records show that **all** of the phone calls he made and received from March 19, 2018 to March 30, 2018—including sixteen calls on March 23, the day of the alleged attack—had origination locations in Georgia. Desbordes Decl. ¶ 15, **Exhibit 10** (Verizon Account Records for March 19, 2018 to March 30, 2018).[4] Mr. Desbordes's debit card records show that he made a purchase at a gas

---

[3] In fact, by the middle of 2018, Mr. Desbordes only had 2,534 Instagram followers. *See* Desbordes Decl. ¶ 7, Exhibit 2 (June 12, 2018 7:50 PM Instagram Screenshot).

[4] Mr. Desbordes still uses the same telephone number. *See* Desbordes Decl. ¶ 15, **Exhibit 11** (Verizon Telephone Bill for February 27, 2025 to March 26, 2025).

station in Loganville, Georgia on March 23, 2018—again, the day of the purported attack. *Id.* ¶ 6, **Exhibit 1** (Bank of America Checking Account Statement for March 10, 2018 to April 9, 2018). All of the other transactions from around the same time were, similarly, made in Georgia. *Id.* On March 10, 2018, Mr. Desbordes completed an escape room with his family in Atlanta—as documented in a photograph. *Id.* ¶ 8, **Exhibit 3** (Photograph dated March 10, 2018 at 9:23 PM).

During that month, Mr. Desbordes was working at an Outback Steakhouse and interviewing for a job at LongHorn Steakhouse. *Id.* ¶¶ 10-12, **Exhibit 5** (Equifax Employment Data Report showing Employer Information for Outback Steakhouse; **Exhibit 6**, Equifax Employment Data Report showing Employer Information for Darden Restaurants, Inc.).[5] Shortly following his interview, and on March 23, 2018, LongHorn Steakhouse in Johns Creek, Georgia emailed Mr. Desbordes offering him a job and asked him to complete his new hire forms before starting his first day of work. *Id.* ¶ 12, **Exhibit 7** (Email dated March 23, 2018 from DONOTREPLY@darden.com). Just two days after Plaintiff claims Mr. Desbordes was in Orinda, California, he started that new job. *Id.* ¶ 13, **Exhibit 8** (Darden Restaurants, Inc. Letter Confirming "Most Recent Start Date" as "03/25/2018"). A few days later, at the start of April, Mr. Desbordes remained in Georgia, as evidenced by a photo he took following a family meal on April 1 and a photograph at his then-residence, to show his mother that the trash collectors had been leaving garbage on the property after the weekly trash removal. *Id.* ¶¶ 9, 15, **Exhibit 4** (Photograph dated April 1, 2018 at 4:09 p.m.), **Exhibit 9** (Photograph dated April 2, 2018 at 1:07 p.m.).

There is no reasonable dispute that **Mr. Desbordes was living and working in Georgia at all times relevant to the facts alleged in the Amended Complaint**.

---

[5] Darden Restaurants, Inc. owns LongHorn Steakhouse. *See* DARDEN, *Our Company*, https://www.darden.com/our-company (last visited April 14, 2025).

### B. Plaintiff Ashley Parham's Prior Sworn Testimony Is Entirely Inconsistent With Her Counsel's Current Allegations.

Approximately a month after the alleged attack took place, Ms. Parham made a police report. Dkt. 18 ¶ 151; Declaration of David Grossman ("Grossman Decl.") ¶ 2, **Exhibit 12** at 11-15. In that police report, Ms. Parham stated that she was acquainted with Mr. Pearce and another friend of his, who she referred to as his "twin" based on their similar physical appearance. *Id.* at 13. Ms. Parham explained that she had consensual sex with Mr. Pearce on or about March 11, 2018, and was invited to Mr. Pearce's home on March 23, 2018. *Id.* When she arrived, she went for a drive with Mr. Pearce in the middle of the night (3 a.m.) and, when she returned, Mr. Pearce and his friend, the "twin" she had previously met, had nonconsensual sex with her. *See* Grossman Decl., **Exhibit 12** at 13-15. Ms. Parham described the second assailant, Mr. Pearce's "twin," as "a white male adult approximately 35 to 40 years old, 6 feet tall with a thin build. Brown hair with brown eyes and a short beard." *Id.* at 14.

Ms. Parham sent repeated emails and texts to Mr. Pearce in the following months, and in 2019, Mr. Pearce eventually sought a restraining order against Ms. Parham. *Id.* at 19-38, 59-68. In response to this restraining order request, Ms. Parham submitted a sworn statement discussing the alleged March 23, 2018 attack. *Id.* at 6 (affirmation that information true and correct), 7-9. Her description was consistent with the police report: she asserted that she was assaulted by Mr. Pearce and one of his friends, who looked extremely similar to Mr. Pearce. *Id.* at 7. The court records also include exhibits containing extensive communications sent from Ms. Parham to Mr. Pearce. *Id.* at 19-38, 59-68.

There is no evidence in these pre-existing court records indicating that anyone other than Mr. Pearce and his "twin" friend were at his home on the night in question. There is no claim that Sean Combs (Diddy) was present at this suburban home, or that other celebrities and athletes attacked her. There is no statement in

Ms. Parham's police report or her sworn testimony in opposition to the restraining order request indicating that any women were present (as she alleges in her Amended Complaint), nor is there any evidence to support her current allegation that she tried to stab Mr. Combs and was subsequently shot at in the street. Virtually none of the facts alleged in the Amended Complaint can be found in the 2018 police report and 2019 court records.

## III. ARGUMENT

The Court should impose sanctions against Plaintiffs and their counsel because Plaintiffs' allegations against Mr. Desbordes violate Federal Rule of Civil Procedure 11(b). Documentary evidence establishes – beyond reasonable dispute – that Mr. Desbordes could not have attacked Plaintiff on March 23, 2018 in Orinda, California. At all relevant times, Mr. Desbordes was in Georgia. Further, Plaintiff Parham's previous statements about the assault (including the police report Plaintiffs alleged was unobtainable) make clear that counsel failed to conduct even a minimal investigation into the claims against Mr. Desbordes before thrusting him into the middle of allegations of horrendous conduct. Dismissal of the claims against Mr. Desbordes and monetary sanctions are the proper remedy for Plaintiffs' and counsels' false allegations against Mr. Desbordes.

"Federal Rule of Civil Procedure 11 provides for the imposition of sanctions when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997). The rule's "central purpose . . . is to deter baseless filings in the District Court" by allowing courts to impose appropriate sanctions. *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990). Accordingly, Rule 11 "sets up a means by which litigants certify to the court, by signature, that any papers filed are well founded." *Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 542 (1991); *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) ("Filing a complaint in federal court is no trifling undertaking. An attorney's

signature on the complaint is tantamount to a warranty that the complaint is well grounded in fact . . . and that it is not filed for an improper purpose.”).

To satisfy this requirement, counsel has an affirmative obligation to investigate **both the legal and factual basis** for any pleading or paper filed with the court. *Bus. Guides, Inc.*, 498 U.S. at 542. Where a complaint is the subject of a Rule 11 motion, the court must determine: “(1) whether the complaint is legally or factually baseless from an objective perspective, and (2) [whether] the attorney has conducted a reasonable and competent inquiry before signing and filing it.” *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005).

**1. The Claims against Mr. Desbordes are Factually Baseless.**

Frivolous filings include those “without factual foundation.” *Estate of Blue*, 120 F.3d at 985. Whether allegations are factually baseless is an *objective* inquiry. *Holgate*, 425 F.3d at 676. “A claim is well grounded in fact if an independent examination reveals some credible evidence in support of a party’s statements.” *Song Fi, Inc. v. Google, Inc.*, 2016 U.S. Dist. LEXIS 104404, at *3-4 (N.D. Cal. Aug. 8, 2016).

There is no credible evidence supporting Plaintiffs’ claims that Mr. Desbordes was involved in the attack. Instead, the evidence shows the opposite: Mr. Desbordes could not have been involved because he was in Georgia. Phone and bank records show Mr. Desbordes made calls and purchases thousands of miles away **on the same date Plaintiffs allege he was in California**. Dkt. 18 ¶ 43; Desbordes Decl. **Exhibits 1, 10**. In the days surrounding March 23, 2018, Mr. Desbordes’s purchases took place in Duluth, Georgia; Snellville, Georgia; and Loganville, Georgia. Desbordes Decl. **Exhibit 1**. In the weeks surrounding March 23, 2018, Mr. Desbordes’s calls all originated from a spattering of nearby cities, including Atlanta, Duluth, Norcross, and Marietta. Desbordes Decl. **Exhibit 10**.

Employment records and photographs show that Mr. Desbordes was in Georgia as well—he completed an escape room on March 10 (Desbordes Decl. ¶ 8,

**Exhibit 3**); he interviewed for and started a new job on March 25 (Desbordes Decl. ¶¶ 11-13, **Exhibits. 6-8**); and he had a family dinner on April 1 (Desbordes Decl. ¶ 9 **Exhibit 4**). Mr. Desbordes has never been to Orinda, California; he has never met Ms. Parham; in 2018 he was not a public figure and did not know any of the named Defendants; and he was in Georgia on the day of the alleged attack. Desbordes Decl. ¶¶ 2-5.

Plaintiffs' own representations to the police and her statements made under penalty of perjury during the DVRO proceedings underscore the absence of any evidentiary basis for the allegations against Mr. Desbordes.[6] The police report from April 17, 2018, notes Ms. Parham claimed she was attacked by Pearce and his "twin," a thin white man with brown eyes and a short beard. Grossman Decl. **Exhibit 11** at 14. The Amended Complaint alleges Ms. Parham was too afraid to name Mr. Combs in that report. Dkt. 18 ¶ 151. But the contemporaneous emails and text messages attached to the DVRO papers, including those attached by Ms. Parham and her then-counsel, show that, in dozens of communications, she said nothing whatsoever about any more attackers, or about the outlandish claims her counsel had made in the Amended Complaint. *See* Grossman Decl. **Exhibit 12** at 19-38. In her sworn statement made in 2019, Ms. Parham largely reinforced the statement she had made to police: that she had been violated by Pearce and **one** of his friends. *See id.* at 7-8. All told, none of the reports, statements, or communications provided as evidence by Pearce and Parham during the DVRO proceedings make any mention of Mr. Desbordes, anyone remotely matching his description, or indicate that there were more than two individuals who allegedly attacked Ms. Parham on March 23, 2018. *See generally id.*

---

[6] The court can and should take judicial notice of the records from those court proceedings. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (taking judicial notice of various court filings).

The Amended Complaint does not fill any of the gaps in the narrative regarding Mr. Desbordes's alleged involvement in the attack. It does not explain *how*, five months after the initial complaint was filed, Mr. Desbordes was supposedly identified as one of the "John Doe" defendants. It does not allege how or why Mr. Desbordes, an alleged resident of "either Maryland or Georgia" ended up in Orinda, California. And it does not explain how Mr. Desbordes, at that time a 23-year-old waiter who was not a public figure, ended up on a cross-country trip with a group of celebrities.[7]

**2. Plaintiffs' Counsel Failed To Conduct A Reasonable Inquiry.**

"The reasonably inquiry test is meant to assist courts in discovering whether an attorney, after conducting an objectively reasonably inquiry into the facts and law, would have found the complaint to be well-founded." *Holgate*, 425 F.3d at 677. Whether an inquiry is reasonable depends on "all of the circumstances of a case." *Lake v. Gates*, 130 F.4th 1064, 2025 U.S. App. LEXIS 6015, at *10 (9th Cir. 2025) (citation omitted). For example, a complaint that must be rushed because of an approaching statute of limitations might allow for a "more cursory inquiry" than when an attorney has "ample time to investigate." *Id.* at *10-11.

It is clear that Plaintiffs' counsel failed to conduct a reasonable inquiry into the allegations regarding Mr. Desbordes. The Amended Complaint essentially admits this. Plaintiffs allege that counsel was unable to locate the 2018 police report from the Contra Costa Sheriff's Office. Dkt. 18 ¶¶ 151-58. However, this document was included in publicly-available records of the DVRO proceedings between Ms. Parham and Mr. Pearce. Grossman Decl. ¶ 2. In fact, the police report was an exhibit **submitted by Ms. Parham** and her then-counsel. *Id.* **Exhibit 11** at 8

[7] The only connection the Amended Complaint attempts to draw between Mr. Desbordes and Mr. Combs is based on the fact that a comedy television show hosted by Mr. Desbordes appeared on a network owned by Mr. Combs *in 2021*, years removed from the alleged incident. *See* Dkt. 18 ¶ 320 n.3.

¶ 9, 11-15. Basic diligence would have discovered the report which, at least in 2019, was in Plaintiff's possession. Further, basic internet and public records searches would have revealed that Mr. Desbordes lived in Georgia in 2018. It also would have shown a complete absence of any connections between Mr. Desbordes and any of the named defendants during that time period.

Other courts have found similar lapses in vetting to be sanctionable. *See, e.g.*, *Song Fi*, 2016 U.S. Dist. LEXIS 104404, at *8-9 (allegation violated Rule 11 where Defendant showed information available on internet indicated allegations were false); *Lake v. Gates*, 2025 U.S. App. LEXIS 6015, at *11 (true facts about actual allegations had been publicly available for years); *Homecare CRM, LLC v. Adam Group, Inc.*, 952 F. Supp. 2d 1373, 1380 (N.D. Ga. 2013) ("[E]vidence showing the frivolousness of the claim comes from [Plaintiff], so it and its counsel should have been aware that the claim was frivolous.").

Counsels' failure to investigate the claims is underscored by the time they had to investigate the allegations against Mr. Desbordes. There was no need for a rush job. Plaintiffs' counsel had **months** they could have used to investigate these claims. Per Plaintiffs' allegations, their counsel was retained sometime in or after July 2024. Dkt. 18 ¶¶ 156-57. The initial complaint was filed in October of 2024, and Mr. Desbordes was not added as a defendant until March of 2025. In the five months between October 2024 and the filing of the Amended Complaint, counsel had ample time to investigate the public record and their clients' own files.

Worse, Plaintiffs' counsel has been aware of the baselessness of the allegations against Mr. Desbordes for more than a month, and the failure to withdraw these claims is inexcusable. *See Holgate*, 425 F.3d at 678 (noting Rule 11 advisory committee's notes explained the safe harbor provision allows for a party to avoid sanctions by either withdrawing the offending position or acknowledging that it lacks evidence to support it); *Carlton Grp., Ltd. v. Tobin*, 2003 U.S. Dist. LEXIS 13332, *21 (S.D.N.Y. July 31, 2003) ("Rule 11 sanctions are appropriate where an

attorney or party declines to withdraw a claim upon an express request by his or her adversary after learning that the claim was groundless." (cleaned up)); *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008) ("[Plaintiff] continued to advocate a claim that had no legal basis and refused to alter or withdraw it when that deficiency was pointed out to it. That conduct warranted Rule 11 sanctions.").

**3. Dismissal and Sanctions are Appropriate Remedies**.

Sanctions imposed in response to Rule 11 violations should "deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). The court, in its discretion, may award attorneys' fees traceable to the violation and dismiss claims. *See* Fed. R. Civ. P. 11(c)(4); *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) (affirming dismissal with prejudice pursuant to Rule 11 and court's inherent powers); *Song Fi*, 2016 U.S. Dist. LEXIS 104404, at *13 (awarding fees for work related to Rule 11 motion). Both remedies are appropriate here.

The Ninth Circuit recently explained that Rule 11's "deterrent function" plays a role of greater importance when an action "concerns a topic of national concern." *Lake*, 2025 U.S. App. LEXIS 6015, at *12. Other courts have explained that the "stigmatizing" effects of certain allegations can make sanctions "particularly important." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 660 (S.D.N.Y. 1996), *aff'd* 113 F.3d 1229 (2d Cir. 1997); *see also Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 685 (5th Cir. 1989) ("[A]n attorney's responsibility to conduct a reasonable prefiling investigation is particularly important in RICO claims.").

In this case, Plaintiffs have baselessly attributed graphic, criminal acts to Mr. Desbordes. The national concern of these allegations is demonstrated by the media storm that arose following Plaintiffs' allegations being made public. And, the stigma associated with these allegations is plain on its face. In *Katzman*, the court

highlighted the stigmatizing nature of a RICO allegation *in a case involving marketing different prices to different groups*. *See Katzman*, 167 F.R.D. at 654. This is a RICO case alleging a vicious sexual assault.

This lawsuit is entirely lacking in merit. Its allegations are fantastical and are contradicted by prior sworn testimony by the Plaintiff herself. Further, the allegations – which are absurd and baseless – are extremely damaging to any individual who is falsely impugned by Plaintiffs' counsel's intentional fabrications. Plaintiffs and their counsel **<u>had every opportunity to avoid sanctions</u>**. As discussed above, there were months during which even the most basic diligence would have uncovered Ms. Parham's previous statements that directly contradict the allegations against Mr. Desbordes. Basic diligence would also have established that Mr. Desbordes had no ties to Orinda, California, or the other individuals in question in 2018. Even after filing this false Amended Complaint, Mr. Desbordes's counsel sent a detailed letter explaining the factual deficiencies in Plaintiffs' complaint – offering an opportunity for Plaintiffs to dismiss Mr. Desbordes from the case.

The Court should issue the most severe sanctions possible against Plaintiffs' counsel. There is absolutely no credible explanation for Ariel Mitchell and Sean Perez's conduct in this lawsuit. They filed a false lawsuit against Mr. Desbordes, they were advised that their claims were fabricated and were contradicted by irrefutable evidence, and they steadfastly refused to withdraw these false claims. Severe sanctions, including dismissal and the cost of the fees incurred in bringing this motion, must be awarded to deter Plaintiffs and counsels' misconduct. More than $50,000 worth of attorneys' fees has been incurred by Mr. Desbordes related to the Amended Complaint thus far. *See* Grossman Decl. ¶¶ 3-9. If the Court grants this motion and is inclined to award monetary sanctions, Mr. Desbordes requests that he be given an opportunity to submit materials related to the hours spent addressing Plaintiffs' Amended Complaint and reasonable rates. *See Song Fi, Inc.*, 2016 U.S. Dist. LEXIS 104404, at *13 (granting motion for sanctions and ordering

Defendants' counsel to submit documentation relating to fees incurred within ten days).

## IV. CONCLUSION

For all of the foregoing reasons, Mr. Desbordes respectfully requests that the Court sanction Plaintiffs and their counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure.

Dated: May 9, 2025

LOEB & LOEB LLP

By: * /s/ David Grossman*
David Grossman
Tyler Downing

Attorneys for Defendant Drew Desbordes