ANDREW V. JABLON (SBN 199083)
E-Mail: ajablon@rpblaw.com
STACEY N. KNOX (SBN 192966)
E-Mail: sknox@rpblaw.com
RESCH POLSTER & BERGER LLP
1840 Century Park East, 17th Floor
Los Angeles, California 90067
Telephone: 310-277-8300
Facsimile: 310-552-3209

Attorneys for Defendant Odell Beckham, Jr.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ASHLEY PARHAM, JANE DOE, and JOHN DOE,<br><br>    Plaintiffs,<br><br>    vs.<br><br>SEAN COMBS a/k/a  "P. Diddy," "Puff Daddy," "Love," "Puffy" and "Diddy," KRISTINA KHORRAM, SHANE PEARCE, RUBEN VALDEZ, JOHN PELLETIER, ODELL BECKHAM JR., DREW DESBORDES a/k/a "Druski," JACQUELYN WRIGHT a/k/a "Jaguar Wright", HELENA HARRIS-SCOTT, MATIAS GONZALEZ, BRANDI CUNNINGHAM, JANICE COMBS, KEITH LUCKS a/k/a "Big Homie CC," and JOHN and JANE DOES 1-10,<br><br>    Defendants. | Case No. 3:24-cv-07191-RFL<br><br>**NOTICE OF MOTION AND MOTION OF ODELL BECKHAM JR. FOR THE IMPOSITION OF SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL PURSUANT TO FED. R. CIV. P. 11; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:    Hon. Rita F. Lynn<br>Date:     October 14, 2025<br>Time:     10:00 a.m.<br>Crtrm.:   15<br><br>Judge:    Hon. Rita F. Lin<br><br>Trial Date:          None Set |

/ / /

/ / /

/ / /

/ / /

/ / /

Case No. 3:24-cv-07191-RFL
NOTICE OF MOTION AND MOTION OF ODELL BECKHAM JR. FOR THE IMPOSITION OF SANCTIONS
AGAINST PLAINTIFFS AND THEIR COUNSEL PURSUANT TO FED. R. CIV. P. 11

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 14, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Rita F. Lynn, located in the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, defendant Odell Beckham Jr. ("**Beckham**") will and hereby does move this Court for an order imposing sanctions, pursuant to Fed. R. Civ. P. 11, against plaintiff Ashley Parham, and her counsel Ariel Mitchell of the Law Office of Ariel Mitchell, P.A. and Shawn Perez, of the Law Offices of Shawn R. Perez, in the form of (a) monetary sanctions, payable jointly and severally by Plaintiff and her counsel, in an amount not less than the reasonable attorneys' fees and costs Beckham has incurred as a result of this baseless suit, including but not limited to the instant Motion, totaling not less than $61,896; and (b) dismissal of Plaintiff's claims against Beckham.

This Motion is made upon the grounds that the allegations in Plaintiff's First Amended Complaint as to Beckham are frivolous, inconsistent with available facts, and were brought without a reasonable inquiry, in violation of Rule 11.  Fed. R. Civ. P., 11  Evidence available with even a minimal inquiry would have confirmed that Plaintiff's allegations against Beckham are entirely inconsistent with prior a police report and other sworn testimony that Plaintiff herself submitted. Further, evidence that Beckham's counsel subsequently provided to Plaintiff confirmed that Beckham was not even in the same city as Plaintiff during the timeframe in which Plaintiff alleges the assault occurred.

In moving for relief under Rule 11, Beckham expressly reserves, and does not waive, all available defenses, including lack of personal jurisdiction and improper venue, and does not waive service of process, which to date has not been accomplished.

In accordance with Federal Rule of Civil Procedure 11(c)(2), Plaintiff's counsel was served with a copy of Beckahm's instant Motion on or about June 17, 2025, and were given an opportunity to withdraw the entirely fabricated claims against Beckham in their First Amended Complaint and dismiss him from this action. They declined to do so.

The Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying declarations of Beckham, Jeremy Hill, Ajay Sangha,

RESCH POLSTER & BERGER LLP

1138912.3

1    Grigor Vahanyan, and Andrew V. Jablon, all other pleadings and records on file in this action, and

2    upon such other oral and documentary argument and evidence as may be presented at or before the

3    time of hearing.

4

5    DATED:  August 20, 2025                     RESCH POLSTER & BERGER LLP

6

7                                                          By:  _____

8                                                                  ANDREW V. JABLON
                                                                  STACEY N. KNOX
9                                                          Attorneys for Defendant Odell Beckham, Jr.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION OF ODELL BECKHAM JR. FOR THE IMPOSITION OF SANCTIONS
AGAINST PLAINTIFFS AND THEIR COUNSEL PURSUANT TO FED. R. CIV. P. 11

1138912.3

RESCH POLSTER & BERGER LLP

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................7

I.     INTRODUCTION.................................................................................................7

II.    STATEMENT OF RELEVANT FACTS ............................................................9

    A.    The Alleged Assault and Plaintiff's Prior Sworn Testimony Regarding the Incident. ...............................................................................................9

    B.    Plaintiff's Initial Complaint and Subsequent FAC. ...............................10

    C.    Plaintiff's Police Report and Subsequent Sworn Statement Conflict With the Allegations in Her Initial Complaint and FAC. ........................11

    D.    Beckham Was in Los Angeles, Hundreds of Miles Away From the Scene, at the Time of the Alleged Assault. ...............................................11

    E.    Plaintiff's Counsel Has Recently Identified the Supposed Evidentiary Support for Plaintiff's Allegations as to Beckham, Which is Nearly Non-Existent. ....................................................................................13

III.   ARGUMENT ......................................................................................................14

    A.    The Allegations in Plaintiff's FAC are Provably False and Entirely Frivolous, In Light of Evidence That Plaintiff's Counsel Has Been Provided. ......................14

    B.    Plaintiff's Counsel Failed to Conduct a Competent and Reasonable Investigation in Bringing the Claims Set Forth in the FAC. ...................15

    C.    Dismissal and Monetary Sanctions Against Plaintiff and Her Counsel are Both Appropriate. ..................................................................................19

IV.   CONCLUSION ..................................................................................................21

NOTICE OF MOTION AND MOTION OF ODELL BECKHAM JR. FOR THE IMPOSITION OF SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL PURSUANT TO FED. R. CIV. P. 11

1138912.3

1

**<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Federal Cases**

4

*Estate of Blue v. County of Los Angeles* (9th Cir. 1997)
   120 F.3d 982.................................................................................................... 14

5

6

*Estate of Calloway v. Marvel Entertainment Group, a Div. of Cadence Industries*
   *Corp.* (2d Cir. 1993)
   9 F.3d 237 ....................................................................................................... 20

7

8

*Carlton Group, Ltd. v. Tobin*
   (S.D.N.Y., July 31, 2003, No. 02 CIV.5065 SAS) 2003 WL 21782650 ............... 18

9

*Chapman & Cole v. Itel Container Int'l B.V.* (5th Cir. 1989)
   865 F.2d 676.................................................................................................... 19

10

11

*Combs v. Rockwell Int'l Corp.* (9th Cir. 1991)
   927 F.2d 486.................................................................................................... 19

12

13

*Fabriko Acquisition Corp. v. Prokos* (7th Cir. 2008)
   536 F.3d 605.................................................................................................... 18

14

*Frazier v. Cast* (7th Cir. 1985)
   771 F.2d 259 ................................................................................................... 17

15

16

*Hendrix v. Naphtal* (9th Cir. 1992)
   971 F.2d 398.................................................................................................... 15

17

*Holgate v. Baldwin* (9th Cir. 2005)
   425 F.3d 671........................................................................................ 14, 16, 18

18

19

*Homecare CRM, LLC v. Adam Group, Inc.* (N.D. Ga. 2013)
   952 F. Supp. 2d 1373 ...................................................................................... 18

20

21

*Katzman v. Victoria's Secret Catalogue* (S.D.N.Y. 1996)
   167 F.R.D. 649, *aff'd* (2d Cir. 1997) 113 F.3d 1229...................................... 19, 20

22

23

*Lake v. Gates* (9th Cir. 2025)
   130 F.4th 1064........................................................................................ 16, 18, 19

24

25

*Mercury Air Group, Inc. v. Mansour* (5th Cir. 2001)
   237 F.3d 542.................................................................................................... 16

26

*Song FI, Inc. v. Google, Inc.*
   (N.D. Cal., Aug. 8, 2016, No. C 14-5080 CW) 2016 WL 4180214 .......... 14, 18, 19

27

28

NOTICE OF MOTION AND MOTION OF ODELL BECKHAM JR. FOR THE IMPOSITION OF SANCTIONS
AGAINST PLAINTIFFS AND THEIR COUNSEL PURSUANT TO FED. R. CIV. P. 11

RESCH POLSTER & BERGER LLP

1138912.3

RESCH POLSTER & BERGER LLP

**Federal Statutes**

Racketeer Influenced and Corrupt Organizations Act
     18 U.S.C. §§ 1961-1968 ................................................................................. 19

**California Statutes**

California Government Code
     § 7923.605 ....................................................................................................... 16

**Other Authorities**

Federal Rule of Civil Procedure 11 ................................................................... *passim*

Federal Rule of Civil Procedure 11(c)(2) .............................................................. 8

Federal Rule of Civil Procedure 11(c)(4) ............................................................ 19

1138912.3

RESCH POLSTER & BERGER LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff Ashley Parham ("**Plaintiff**"), through her counsel Ariel Mitchell and Sean Perez (collectively, "**Plaintiff's Counsel**"), has filed a sensational lawsuit, alleging that a group of men and women, most notably the musician Sean Combs (a/k/a Puffy, P-Diddy, Puff Daddy, etc.) ("**Combs**"), along with others, sexually assaulted her, among other crimes.

Approximately six months after filing her initial complaint, Plaintiff filed her First Amended Complaint (the "**FAC**"), now alleging that Odell Beckham Jr. ("**Beckham**"), a well-known professional football player, also participated in this alleged attack.   The inclusion of Beckham in Plaintiff's graphic account – involving kidnapping, sexual assault, impersonating a police officer, gun play, bribery, government cover-ups, an attempted stabbing, and the unsolved murder of Tupac Shakur – is beyond the pale.  Plaintiff's Counsel either fabricated these allegations, or failed entirely to conduct even the most cursory of investigations prior to filing.  Nearly every allegation in the FAC is inconsistent with  Plaintiff's own prior sworn statements and her filed police report – all of which are publicly available.  And as to Beckham, in particular, the allegations are frivolous and provably false based on readily available evidence, of which Plaintiff's counsel is aware.

Plaintiff's claims center on actions allegedly taken by Combs and others in Orinda, California, a Bay Area suburb, on March 23, 2018.  Beckham's counsel has provided Plaintiff's Counsel with evidence establishing that Beckham was hundreds of miles away in Los Angeles at the time when the events alleged in the FAC occurred.

Basic diligence would have revealed the publicly available evidence contradicting Plaintiff's claims. Even more egregious, the investigation Plaintiff's Counsel supposedly did undertake as to Beckham established that Plaintiff *did not even claim to her lawyer that she recognized Beckham*; her counsel's "investigation" instead relied largely on Plaintiff supposedly recalling that she found the name Cornelius (Beckham's middle name) to be funny.

An actual, competent, and reasonable investigation would have shown that Plaintiff's claims against Beckham were frivolous, and in fact inconsistent with her own prior sworn statements. For instance, the police report Plaintiff filed regarding the incident, which her FAC appears to allege

RESCH POLSTER & BERGER LLP

1    was withheld in some sort of a coverup (*see* Dkt. 18, ¶¶ 135, 153-158), was easily obtainable from

2    public records. In it, Plaintiff told police that she was assaulted on March 23, 2018 by two men:

3    Shane Pearce, a white male who is one of the named defendants here, and a friend of his, with whom

4    she was also familiar, who she described as looking like Pearce's "twin."  Plaintiff herself filed that

5    April 2018 police report in court when opposing a domestic violence restraining order that Mr.

6    Pearce sought against her the following year.

7            In a later sworn statement in those restraining order proceedings, Plaintiff largely reiterated

8    the story she told the police in 2018: that she was attacked by Mr. Pearce and *one* of his friends,

9    who looked much like him.  That report and the subsequent record contain none of Plaintiff's current

10    allegations against the various athletes and entertainers she now identifies as assailants in the FAC,

11    let alone the litany of sensationalist details about the alleged act itself.  Plaintiff's prior sworn

12    statements are thus entirely inconsistent with the fantastical claims she and her counsel are now

13    making here – i.e., after initially alleging that she was assaulted by two white men ostensibly within

14    her social circle, she now claims she was assaulted by one white man and numerous black celebrities,

15    including Beckham.  The investigation Plaintiff's counsel supposedly undertook (admittedly *after*

16    the initial complaint was filed) relied on unspecified (and unsworn) input from two additional

17    individuals – the FAC's purported "Doe" defendants – who also appear nowhere in Plaintiff's

18    contemporaneous account of events (a matter of public record, which it appears Plaintiff's counsel

19    may have even reviewed pre-filing).

20            Rule 11 Sanctions against Plaintiff and her counsel are appropriate, given that Beckham's

21    counsel alerted Plaintiff's counsel to the frivolous nature of Plaintiff's allegations multiple times

22    prior to filing the instant Motion, and cautioned that the Motion would follow if Plaintiff did not

23    withdraw her allegations against Beckham.    (Declaration of Andrew V. Jablon ["**Jablon**

24    **Declaration**"], ¶¶ 4, 5 .)  Plaintiff similarly failed to withdraw such allegations after being provided

25    with a copy of the Motion pre-filing, as required under Rule 11's "safe harbor" provision.  Fed. R.

26    Civ. P., Rule 11(c)(2).  Not only is dismissal of all claims against Beckham proper under Rule 11,

27    but it is apparent that monetary sanctions also are necessary to deter Plaintiff's Counsel from further

28    misuse of the judicial process with such utterly indefensible claims.

RESCH POLSTER & BERGER LLP

II.    **STATEMENT OF RELEVANT FACTS**

   A.    **The Alleged Assault and Plaintiff's Prior Sworn Testimony Regarding the Incident**.

   Plaintiff alleges that she was assaulted on March 23, 2018, in Orinda, a Bay Area suburb in Northen California.  She alleges that on March 23, 2018, immediately following the incident, she provided a statement to the Walnut Creek Police, though it is unclear whether that report was reduced to writing.  (Dkt. 18, ¶¶ 148-150.)  On April 17, 2018, approximately a month after the alleged attack, Plaintiff filed a police report regarding the incident. (Dkt. 18 ¶ 151; Jablon Declaration, ¶ 2, Exh. 1, at 11-15.)  In the April 17 report, Plaintiff stated that she was acquainted with Mr. Pearce, a white male, and had encountered, but did not know, another friend of his, who she referred to as his "twin" based on their similar physical appearance. (*Id.* at 13-14.)

   In the April 17, 2018 police report, Plaintiff explained that she had previously had consensual sex with Mr. Pearce on or about March 11, 2018, and was invited to Mr. Pearce's home on March 23, 2018. (*Id.*) The report states that when Plaintiff arrived, she went for a late night (3 a.m.) drive with Mr. Pearce, and that when they returned, Mr. Pearce and his friend, the "twin," assaulted her.  (Jablon Decl., Exh. 1, at 13-14.) Plaintiff described the second assailant, Mr. Pearce's "twin," as "<u>a white</u> male adult approximately 35 to 40 years old, 6 feet tall with a thin build. Brown hair with brown eyes and a short beard." (*Id.* at 14; emphasis added.)

   Plaintiff sent repeated emails and texts to Mr. Pearce in the following months accusing him and his "twin" of rape, never once mentioning any other participants – Beckham, Combs, or anyone else – or any of the other outlandish allegations in the FAC.  (Jablon Decl., Exh. 1, at 19-38.)  In 2019, Mr. Pearce sought a restraining order against Plaintiff.  (*Id.* at 1.) In response to that restraining order request, Plaintiff submitted a sworn statement discussing the alleged March 23, 2018 assault. (*Id.* at 6-9.)  Her description in that statement was consistent with her initial police report – that she was assaulted by Mr. Pearce and one of his friends, who looked similar to Mr. Pearce (i.e., two white males). (*Id.*, at 7.) Court records from the restraining order proceeding include the aforementioned electronic communications from Plaintiff to Mr. Pearce, including "therapeutic" emails (*see id.*, at 8) Plaintiff copied to herself about the incident, none of which contain reference to any other alleged

NOTICE OF MOTION AND MOTION OF ODELL BECKHAM JR. FOR THE IMPOSITION OF SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL PURSUANT TO FED. R. CIV. P. 11

1    assailants *or* the numerous sensational allegations in the FAC. (*Id.*, at 19-38, 61-68.)

2         **B.    Plaintiff's Initial Complaint and Subsequent FAC.**

3         In October 2024, Plaintiff filed her initial complaint in this action, this time alleging that,

4    instead of another white male having perpetrated the March 23, 2018 assault with Mr. Pearce, Mr.

5    Pearce undertook the attack with Mr. Combs, who is black, aided and abetted by a female Combs

6    employee, with various other unnamed DOE defendants participating. (Dkt. 1.)

7         Over five months after filing the case against Pearce and Combs, Plaintiff filed her FAC,

8    now naming Beckham as a Doe defendant, claiming that he was one of several individuals who had

9    participated in the assault, along with comedian and internet personality Drew Desbordes (aka

10   Druski), another newly named defendant, who, like Beckham and Combs (<u>and unlike</u> Mr. Pearce

11   and his supposed twin), is also black.  (Dkt. 18, ¶¶ 22, 76-88.)  The FAC also purports to add two

12   "Doe Plaintiffs"[1],  who were allegedly pistol whipped and kidnapped by the former chief of police

13   of the Las Vegas Police Department and transported to various sex-trafficking safe houses, before

14   being drugged and forced to watch the alleged assault on Plaintiff Parham, resisting Defendants'

15   supposed efforts to make them participate, then masterminding Parham's and their escape.  (*Id.*, ¶¶

16   160-198.)   Not only do these allegations similarly appear nowhere in Plaintiff's police report,

17   declaration, or correspondence, but to date, there is no evidence that these two "Doe Plaintiffs" are

18   anything more than creations of Plaintiff and/or Plaintiff's Counsel.

19        Desbordes, one of the FAC's other newly named defendants, also has filed a motion for

20   sanctions and dismissal under Rule 11 based on grounds similar to those set forth herein – that

21   Plaintiff's sensational claims against him are unsupported, and in fact, contradicted by available

22   evidence.  That Motion is set for hearing on July 8, 2025.

23   
     ─────────────

24   [1] Notably, despite the Court's March 14, 2025 Notice of Electronic Filing Error directing that "a
     motion and proposed order to proceed using a pseudonym must be filed" [Dkt. 37]), Plaintiffs failed

25   to file such a motion until June 9, 2025.  (Dkt. 46.)  That motion argues, incredibly, that neither
     Defendants nor, apparently, the Court, should know the Doe Plaintiffs' names, claiming that

26   "Plaintiffs proceeding under pseudonym does not impact the Defendants ability to access any
     evidence."  (Dkt. 46, at 6:9.)  This is absurd.  First,  Beckham has no idea who these people

27   supposedly are, if they even exist, and if they do exist, whether there similarly are publicly available
     records contradicting their outlandish allegations.  Moreover, Plaintiff's counsel is asking the Court

28   to take them at their word that these people actually do exist.

NOTICE OF MOTION AND MOTION OF ODELL BECKHAM JR. FOR THE IMPOSITION OF SANCTIONS
AGAINST PLAINTIFFS AND THEIR COUNSEL PURSUANT TO FED. R. CIV. P. 11

RESCH POLSTER & BERGER LLP

1138912.3

1    C.    **Plaintiff's Police Report and Subsequent Sworn Statement Conflict With the**

2    **Allegations in Her Initial Complaint and FAC.**

3        There is no evidence, or even allegations, in the pre-existing police or court records

4    indicating that anyone other than Mr. Pearce and his "twin" friend, i.e., two white males, were at

5    Pearce's home on the night of the alleged assault. (Jablon Decl., Exh. 1.)

6        There is no claim in those records that Combs was present at the location (a Bay Area

7    suburb), let alone any allegations that others – and in particular, Beckham – were involved in the

8    alleged attack. (Jablon Decl., Exh. 1.)  While Beckham takes no position as to the veracity of the

9    allegations against Mr. Pearce and his "twin" in Plaintiff's police report, there is nothing in those

10   allegations about the litany of violent and degrading acts graphically detailed in the FAC allegedly

11   done by any of the other named defendants.

12       There is no indication in those records that any women were present (as Plaintiff now

13   alleges).  (*compare* Jablon Decl., Exh. 1 and Dkt. 18.)

14       There is nothing in those records about the DOE plaintiffs.  (*Id.*)

15       Nor are there any prior assertions or allegations that Plaintiff tried to stab Combs or that

16   anyone subsequently shot at her at in the street.  (*Id.*)

17       Similarly, while the exhibits filed in the restraining order proceeding include numerous text

18   and email communications between Plaintiff and Mr. Pearce, including reference to Pearce's friend

19   and alleged co-assailant, none of those communications make any reference to Combs, Beckham,

20   Desbordes, or anyone *other than* the two white males described in Plaintiff's initial police report.

21   (Jablon Decl., Exh. 1.)

22       Indeed, virtually none of the facts alleged in the FAC are in the 2018 police report –

23   supposedly a contemporaneous account of the assault – or in the 2019 court records from the

24   restraining order proceedings that followed.  (Compare Dkt. 18 and Jablon Decl., Exh. 1.)

25   D.    **Beckham Was in Los Angeles, Hundreds of Miles Away From the Scene, at the**

26   **Time of the Alleged Assault.**

27       Not only does Beckham appear nowhere in any of Plaintiff's contemporaneous accounts of

28   the alleged assault, but as Beckham's counsel has explained in correspondence to Plaintiff's Counsel

RESCH POLSTER & BERGER LLP

11

Case No. 3:24-cv-07191-RFL

1138912.3

1   regarding her claims, significant evidence confirms that Beckham was in Los Angeles during the

2   timeframe at issue, hundreds of miles away from the Northern California suburb where the incident

3   allegedly occurred.

4          Plaintiff alleges that the assault took place in Orinda California, a Bay Area suburb,

5   beginning on March 23, 2018.  (Dkt. 18, ¶ 43.)   In March 2018, Beckham resided at a home on

6   Solar Drive in Los Angeles, California along with his friend and business associate Ajay Sangha.

7   (Declaration of Odell Beckham ["**Beckham Declaration**"], ¶ 2; Declaration of Ajay Sangha

8   ["**Sangha Declaration**"], ¶ 2.)  During that timeframe, Beckham regularly engaged a car service –

9   Red Limo Line, LLC ("**Red Limo**") – for transportation.  (Sangha Decl., ¶ 3; Beckham Decl., ¶ 3.)

10  Red Limo is owned and operated by Grigor Vahanyan.   (Declaration of Grigor Vahanyan

11  ["**Vahanyan Declaration**"], ¶ 2; Beckham Decl., ¶ 3.)

12         On March 22, 2018, the day preceding the alleged assault, beginning at 9:30 a.m., Mr.

13  Vahanyan drove Beckham and Mr. Sangha to various locations in the Los Angeles area, including

14  to VELO Sports Center in Carson, California, where Beckham participated in a training session

15  (which was photographed).  (Beckham Decl., ¶ 4; Exh. A; Sangha Decl., ¶ 4; Vahanyan Decl., ¶¶ 5,

16  7; Exh. A.)  Beckham and Mr. Sangha returned home to Solar Drive via Red Limo, driven by Mr.,

17  Vahanyan, at approximately 6 p.m. (Vahanyan Decl., ¶ 6; Sangha Decl., ¶ 4; Beckham Decl., ¶ 5.)

18  Exhausted from his workout, Beckham and Mr. Sangha decided to stay in that evening, inviting

19  their friend Jeremy Hill to the Solar Drive house to join them in playing video games.  (Beckham

20  Decl., ¶¶ 6-9; Exhs. B-D; Declaration of Jeremy Hill, ¶¶ 2, 3; Exh. A; Sangha Decl., ¶ 5.)  Beckham

21  video recorded himself surprising Mr. Hill with a gift while he was playing at 10:02 p.m., as

22  confirmed by the video's metadata.  (Beckham Decl., ¶ 9; Exh. D; Sangha Decl., ¶ 6.)

23         The following day, March 23, 2018 – the day of the alleged assault – Beckham met at his

24  Solar Drive home with Cliff King, a Nike shoe representative.  Beckham left home at Solar Drive

25  that afternoon at approximately 2:30 p.m., when Mr. Vahanyan of Red Limo picked him up there,

26  along with Mr. Sangha.  (Beckham Decl., ¶¶ 10, 11; Sangha Decl., ¶ 7.)  They went to eat and to

27  various bars around Los Angeles, and Mr. Vahanyan returned them to the Solar Drive house at

28  approximately 4:30 a.m. on March 24, 2018.  (Beckham Decl., ¶ 12; Sangha Decl., ¶ 8; Vahanyan

RESCH POLSTER & BERGER LLP

12

NOTICE OF MOTION AND MOTION OF ODELL BECKHAM JR. FOR THE IMPOSITION OF SANCTIONS
AGAINST PLAINTIFFS AND THEIR COUNSEL PURSUANT TO FED. R. CIV. P. 11

1138912.3

RESCH POLSTER & BERGER LLP

1    Decl., ¶ 6.)

2         The following morning, March 24, 2018, Mr. Vahanyan, who had slept in a guest room at

3    Beckham's Solar Drive home the evening before, left the Solar Drive home with Beckham and Mr.

4    Sangha at approximately 9:30 a.m., and drove him to Santa Monica beach, where Beckham worked

5    out with his personal trainer, Jamal Liggin.  (Vahanyan Decl., ¶ 6; Beckham Decl., ¶ 13; Sangha

6    Decl., ¶¶ 9, 10.)  Later that day, at approximately 2:00 p.m., Mr. Vahanyan drove Beckham to the

7    Nickelodeon Kids Choice Awards at the Forum in Inglewood, California, where he was widely seen

8    and photographed.  (Beckham Decl., ¶ 14; Exh. E.)

9         Contemporaneous time records from Mr. Vahanyan's car service, and time stamped text

10   messages and photos from Beckham's cell phone confirm the foregoing timeline.  (Vahanyan Decl.,

11   ¶ 7; Exh. A; Beckham Decl., ¶¶ 2-14; Exhs. A-E.)  Declarations from the referenced individuals

12   confirm the foregoing as well and are being submitted concurrently herewith, all confirming that

13   Beckham was hundreds of miles away from the scene of the alleged crime prior to, during, and after

14   the alleged assault.

15   **E.    Plaintiff's Counsel Has Recently Identified the Supposed Evidentiary Support**

16         **for Plaintiff's Allegations as to Beckham, Which is Nearly Non-Existent.**

17         In opposing the Desbordes Rule 11 Motion, Plaintiff's Counsel has offered details regarding

18   their purported investigation and what they apparently contend constitutes evidentiary support for

19   the FAC's allegations regarding Beckham.  (Dkt. 41.)  That supposed evidence is so absurd as to

20   confirm that Rule 11 sanctions against Plaintiff's Counsel, and dismissal of the FAC's claims against

21   Beckham, are appropriate.

22         In particular, with respect to their investigation, Plaintiff's Counsel does not so much as

23   claim that Plaintiff even recognized Beckham.  Instead, they relied on (1) Plaintiff's supposed

24   statement that "his body type looked familiar"; and (2) other defendants, who she now says were

25   present during the assault, supposedly using Bekham's middle name, Cornelius, which Plaintiff

26   supposedly thought "was a funny, silly and unusual name."  (Dkt. 41, at 1-4.)

27         Glaringly absent from Plaintiff's Counsel's description of their investigation and purported

28   evidence is any mention of Plaintiff's 2018 police report or her 2019 sworn statement, or any

13                                    Case No. 3:24-cv-07191-RFL

evidence as to the existence, let alone the veracity of the supposed Doe Plaintiffs.

### III.    ARGUMENT

A.    **The Allegations in Plaintiff's FAC are Provably False and Entirely Frivolous, In Light of Evidence That Plaintiff's Counsel Has Been Provided.**

Rule 11 prohibits the assertion of frivolous claims in papers filed with the Court.  Fed. R. Civ. P., Rule 11.  Frivolous filings include those "without factual foundation."  *Estate of Blue v. County of Los Angeles* (9th Cir. 1997) 120 F.3d 982, 985 ("Federal Rule of Civil Procedure 11 provides for the imposition of sanctions when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose").  Whether allegations are factually baseless is an *objective* inquiry, which the filing attorney must conduct in reasonable and competent fashion.  *Holgate v. Baldwin* (9th Cir. 2005) 425 F.3d 671, 676 (discussing "two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it").  "A claim is well grounded in fact if an independent examination reveals some credible evidence in support of a party's statements."  *Song FI, Inc. v. Google, Inc.* (N.D. Cal., Aug. 8, 2016, No. C 14-5080 CW) 2016 WL 4180214, at *1.

Here, there clearly is no credible evidence supporting Plaintiff's allegations that Beckham was involved in the assault that she alleges. In fact, the evidence shows the opposite – that during the relevant timeframe, Beckham was in Los Angeles, California, hundreds of miles away from where Plaintiff alleges the attack occurred.  (Beckham Decl., ¶¶ 4-14.)  Declarations as well as contemporaneous business records, video, and photos confirm his presence in Los Angles during the timeframe at issue.  (*Id.*, ¶ 14; Exh. E.)  Indeed, Beckham has never met Plaintiff, and has never been to Orinda, California, the Bay Area suburb where the alleged assault supposedly took place. (Beckham Decl., ¶ 15.)

Plaintiff's own contemporaneous representations to the police and her subsequent sworn statements from the restraining order proceedings underscore the absence of any evidentiary basis for her allegations against Beckham.  The police report describes Plaintiff's claim that she was attacked by Pearce and his "twin," i.e., two white males. (Jablon Decl., Exh. 1, at 14.) The FAC

1  alleges that Plaintiff was too afraid to name Mr. Combs in that report. (Dkt. 18, ¶ 151.) But, putting

2  aside the report, even her contemporaneous emails and text messages submitted with her restraining

3  order papers show that, in dozens of communications (including notes to herself), Plaintiff made no

4  mention of any other attackers – including Combs, Beckham or Desbordes – or any of the other

5  colorful claims in her FAC. (Jablon Decl., Exh. 1, at 19-38.) Similarly, there are no police reports

6  or records, from the night of the incident or otherwise, at the Contra Costa County Office of Sherriff

7  that reference Beckham. (Jablon Decl., ¶ 3; Exh. 2.)

8       In her 2019 sworn statement, Plaintiff largely reiterated the statements in her April 2018

9  police report – that she had been assaulted by Pearce and *one* of his friends. (Jablon Decl., Exh. 1,

10 at 7-8.)  In fact, none of the reports, statements, or communications provided as evidence in

11 connection with the restraining order proceedings make any mention of Beckham or anyone

12 remotely matching his description. Nor did any of that evidence indicate that there were more than

13 two individuals – two white men – who allegedly attacked Plaintiff in Northern California on March

14 23, 2018, when Beckham was in Los Angeles. Indeed, far from showing that Plaintiff's claims are

15 colorable, any and all credible evidence runs directly contrary to her allegations, unequivocally

16 establishing that such claims are factually baseless, and indeed, frivolous.

17      **B.     Plaintiff's Counsel Failed to Conduct a Competent and Reasonable**

18           **Investigation in Bringing the Claims Set Forth in the FAC.**

19      As the court records relating to the restraining order proceedings are public, when Plaintiff's

20 Counsel prepared the FAC, they must have reviewed, or should have reviewed, these

21 contemporaneous descriptions of the alleged assault – descriptions that are dramatically different

22 than what they have alleged in the FAC, which counsel signed and filed.  And in the face of such

23 conflicting contemporaneous statements, there is no way that Plaintiff's Counsel could have arrived

24 at any reasonable, good faith belief that the FAC's allegations were true, despite signing and filing

25 the document.

26      In filing papers with the Court, attorneys are not permitted to blindly accept client statements

27 that are implausible without attempting corroboration. *Hendrix v. Naphtal* (9th Cir. 1992) 971 F.2d

28 398, 400.  The *Hendrix* court affirmed that sanctions were appropriate where an attorney "did not

RESCH POLSTER & BERGER LLP

1138912.3

1    conduct a reasonable investigation," explaining that "blind reliance" on a client's assertions does

2    not constitute a "reasonable inquiry under Rule 11." *Id.*; *Mercury Air Group, Inc. v. Mansour* (5th

3    Cir. 2001) 237 F.3d 542, 548 (counsel subject to sanctions where client's sworn deposition

4    testimony indicated that there was not evidence to support claims).  Here, either Plaintiff's Counsel

5    was grossly negligent in failing to investigate their client's wild accusations *or* counsel knowingly

6    put forth false allegations.  In either case, such lack of diligence requires sanctions against Plaintiff's

7    Counsel under Rule 11, since, at the very least, their factual inquiry was not reasonable.

8         "The reasonably inquiry test is meant to assist courts in discovering whether an attorney,

9    after conducting an objectively reasonably inquiry into the facts and law, would have found the

10   complaint to be well-founded." *Holgate, supra*, 425 F.3d at 677.  "A reasonable inquiry is an inquiry

11   reasonable under all of the circumstances of a case."  *Lake v. Gates* (9th Cir. 2025) 130 F.4th 1064,

12   1069 (internal cites and quotes omitted).

13        Here, it is clear that Plaintiff's counsel failed to conduct a reasonable inquiry into Plaintiff's

14   allegations generally, let alone her newfound allegations against Beckham (putting aside, for

15   purposes of this Motion, the facially implausible details of her claims against Combs and others).

16   The FAC alludes to a lack of complete information, while claiming that relevant information was

17   somehow unobtainable. In particular, the FAC alleges that both Plaintiff and her counsel were

18   rebuffed when attempting to acquire the 2018 police report from the Contra Costa Sheriff's Office.

19   First, it is unclear whether this references the report from the night of the incident or the report from

20   April 17, 2018. (Dkt. 18 ¶¶ 151-58.) As to the latter report, it appears that Plaintiff's counsel may

21   have had a copy of the police report when drafting the FAC, given, for instance, its peculiar mention

22   of details about clothes Plaintiff says she submitted and the police retained (indeed one of the few

23   allegations that is in both the FAC and the police report).  (*See* Dkt. 18, ¶ 151.)  Regardless, the

24   April 17, 2018 report was included in publicly-available records from the restraining order

25   proceedings, where Plaintiff submitted it as an exhibit. (Jablon Decl., Exh. 1.)

26        Furthermore, as to both police reports, Plaintiff *or her counsel* could have easily obtained

27   these records through a Public Records Act request.  Cal. Gov. Code, § 7923.605 ("state and local

28   law enforcement agencies shall disclose the names and addresses of persons involved in, or

NOTICE OF MOTION AND MOTION OF ODELL BECKHAM JR. FOR THE IMPOSITION OF SANCTIONS
AGAINST PLAINTIFFS AND THEIR COUNSEL PURSUANT TO FED. R. CIV. P. 11

RESCH POLSTER & BERGER LLP

RESCH POLSTER & BERGER LLP

1    witnesses other than confidential informants to, the incident, the description of any property

2    involved, the date, time, and location of the incident, all diagrams, statements of the parties involved

3    in the incident, the statements of all witnesses, other than confidential informants, to the victims of

4    an incident, or an authorized representative thereof…"). (*See also*, Jablon Decl., ¶¶ 2, 3; Exhs. 1,

5    2.) Thus, any police reports and related court records could have been retrieved with basic diligence

6    on the part of Plaintiff's Counsel – such diligence being counsel's obligation under Rule 11 to

7    conduct a reasonable investigation.

8        Instead of undertaking to retrieve and review the 2018 police report and Plaintiff's 2019

9    sworn statement, which are radically inconsistent with the FAC's claims, Plaintiff's Counsel admits

10   in her response to Desbordes' Rule 11 Motion that the entire extent of her investigation as to

11   Beckham was supposedly showing Plaintiff his photograph, to which Plaintiff could only state that

12   "his body type looked familiar" – i.e., *Plaintiff did not even say she recognized Beckham* (a world

13   famous professional athlete, whose "body type" — "athletic male" – is hardly unique). (Dkt., 41,

14   at 6.) Otherwise, the only other piece of evidence Plaintiff's Counsel claim they relied upon was

15   Plaintiff's supposed impression that Beckham's middle name, Cornelius, is a "silly and unusual

16   name." (Dkt., 41, at 6:2.) This is a far cry from any reasonable investigation, and certainly is

17   unreasonable where a police report and Plaintiff's own subsequent sworn statement about the

18   incident were available and were either willfully ignored or negligently unreviewed.

19        Contrary to Plaintiff's argument in opposition to the Desbordes Rule 11 Motion, the issue is

20   not that the FAC fails to state a claim as a matter of law. (Dkt. 41, at 19.) "Legal sufficiency" of

21   Plaintiff's pleading is not the problem. On the contrary, if any of the FAC's allegations are true, the

22   perpetrators of the heinous acts alleged should be punished. Rather, the issue is that the claims are

23   implausible on their face and, with respect to Beckham, unsupported, and in fact contradicted, by

24   available evidence. Rule 11 demands more from Plaintiff's Counsel, who, if they conducted the

25   most basic diligence simply could not have reasonably believed their client's story. *Frazier v. Cast*

26   (7th Cir. 1985) 771 F.2d 259, 263 (sanctions appropriate where "counsel could not reasonably have

27   believed" client's factual assertions in light of party's "statements in their own words") (abrogated

28   on other grounds).

NOTICE OF MOTION AND MOTION OF ODELL BECKHAM JR. FOR THE IMPOSITION OF SANCTIONS
AGAINST PLAINTIFFS AND THEIR COUNSEL PURSUANT TO FED. R. CIV. P. 11

1138912.3

1    Case law establishes that such insufficient diligence warrants sanctions under Rule 11. *Song*
2 *Fi, supra*, 2016 WL 4180214, at * 2 (Rule 11 sanctions appropriate where "[p]ublicly-available
3 information demonstrates that Plaintiffs' counsel could not have undertaken an objectively
4 reasonable inquiry before presenting this allegation"); *Lake, supra*, 130 F. 4th at 1070 (sanctions
5 appropriate where true facts about allegations had been publicly available for years); *Homecare*
6 *CRM, LLC v. Adam Group, Inc.* (N.D. Ga. 2013) 952 F. Supp. 2d 1373, 1380 ("evidence showing
7 the frivolousness of the claim comes from [Plaintiff], so it and its counsel should have been aware
8 that the claim was frivolous").

9    Her counsel's failure to reasonably and competently investigate Plaintiff's claims against
10 Beckham is underscored by the amount of time they had to do so, making their lack of diligence all
11 the more egregious. *Lake, supra,* 130 F. 4th at 1069 (factors for assessing reasonableness include
12 whether plaintiff's attorney had "ample time to investigate"*).* Indeed, Plaintiff's Counsel had
13 months to investigate these claims. Per Plaintiff's own allegations, she retained counsel sometime
14 in or around July 2024. (Dkt. 18 ¶¶ 156-57.) Her initial complaint was filed in October 2024, and
15 Beckham was not added as a defendant until March 2025. In the intervening months, Plaintiff's
16 Counsel had more than "ample time to investigate" the public record and their client's own files,
17 yet clearly did not do so (or ignored their findings).

18    Similarly, Plaintiff's Counsel was advised no later than April 30, 2025, in correspondence
19 from Beckham's counsel (Jablon Decl., ¶ 4; Exh. 3), of the baseless nature of their allegations
20 against Beckham, making their failure to withdraw these claims inexcusable. *See Holgate, supra*,
21 425 F.3d at 678 (discussing Rule 11 safe harbor provision allowing party to avoid sanctions by either
22 withdrawing the offending position or acknowledging that it lacks evidence to support it); *Carlton*
23 *Group, Ltd. v. Tobin* (S.D.N.Y., July 31, 2003, No. 02 CIV.5065 SAS) 2003 WL 21782650, at *6
24 ("Rule 11 sanctions are appropriate where an attorney or party declines to withdraw a claim upon
25 an express request by his or her adversary after learning that [the claim] was groundless.") (Internal
26 quotes omitted); *Fabriko Acquisition Corp. v. Prokos* (7th Cir. 2008) 536 F.3d 605, 610 ("[Plaintiff]
27 continued to advocate a claim that had no legal basis and refused to alter or withdraw it when that
28 deficiency was pointed out to it. That conduct warranted Rule 11 sanctions."). Plaintiff and her

18

NOTICE OF MOTION AND MOTION OF ODELL BECKHAM JR. FOR THE IMPOSITION OF SANCTIONS
AGAINST PLAINTIFFS AND THEIR COUNSEL PURSUANT TO FED. R. CIV. P. 11

1  counsel continuing to pursue her clearly frivolous claims, including by refusing to dismiss the action

2  during the Rule 11 safe harbor period (and, Beckham anticipates, opposing the instant Motion), is

3  inconsistent with her counsel's obligations under Rule 11.

4        **C.**        **Dismissal and Monetary Sanctions Against Plaintiff and Her Counsel are Both**

5              **Appropriate.**

6        In light of the foregoing, sanctions are clearly in order.  As to the precise sanctions that the

7  Court should impose, from a policy standpoint, Rule 11 sanctions should work to "deter repetition

8  of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). The

9  Court, in its discretion, may award attorneys' fees attributable to the violation and it may dismiss

10  the plaintiff's claims. *See* Fed. R. Civ. P. 11(c)(4); *Combs v. Rockwell Int'l Corp.* (9th Cir. 1991)

11  927 F.2d 486, 488 (affirming dismissal with prejudice pursuant to Rule 11 and court's inherent

12  powers); *Song Fi, supra*, 2016 WL 4180214, at *5 (awarding fees for work related to Rule 11

13  motion). Both of those remedies are appropriate here.

14        The high profile and sensational nature of this lawsuit makes such relief particularly

15  appropriate.  As the Ninth Circuit recently explained in the *Lake* case, Rule 11's "deterrent function"

16  is of greater importance when an action "concerns a topic of national concern."  *Lake, supra*, 130 F.

17  4th at 1070. Other courts have held that the "stigmatizing" effects of certain allegations can make

18  sanctions "particularly important." *Katzman v. Victoria's Secret Catalogue* (S.D.N.Y. 1996) 167

19  F.R.D. 649, 660, *aff'd* (2d Cir. 1997) 113 F.3d 1229; *see also Chapman & Cole v. Itel Container*

20  *Int'l B.V.* (5th Cir. 1989) 865 F.2d 676, 685 ("[A]n attorney's responsibility to conduct a reasonable

21  prefiling investigation is particularly important in RICO claims.").

22        In this case, Plaintiff has baselessly attributed heinous, sensational criminal acts to Beckham

23  (and other celebrities), bringing claims under the Racketeer Influenced and Corrupt Organizations

24  Act ("**RICO**"). The national concern regarding these allegations is demonstrated by the significant

25  media attention, largely driven by Plaintiff's counsel, that the suit has garnered.  (Jablon Decl., ¶ 6;

26  Exh. 5).

27        The stigma associated with RICO allegations, and the instant sex crime allegations in

28  particular, is undeniable. In *Katzman*, the court acknowledged the stigma inherent in a RICO suit

RESCH POLSTER & BERGER LLP

1138912.3

RESCH POLSTER & BERGER LLP

1    involving a corporation's anti-competitive behavior. *See Katzman, supra*, 167 F.R.D. at 654.  The

2    allegations at issue here, on their face, are far more morally reprehensible, and thus even more

3    stigmatizing.  Such allegations would be extremely damaging to any individual, public figure or

4    otherwise, who is accused of having participated in such acts.  Here, Beckham is a public figure,

5    whose reputation is a significant component of his livelihood (evidenced by his attendance at a

6    Nickelodeon children's television event within a night after the evening in question), making the

7    false allegations against him all the more damaging.

8        Plaintiff and her counsel were given every opportunity to walk away from their absurd

9    allegations against Beckham and thereby avoid sanctions. As discussed above, there were months

10    during which Plaintiff's counsel, with basic diligence, could have uncovered their client's previous

11    statements, which directly contradict the FAC's allegations against Beckham.

12        Even after the FAC had been filed with all of its false accusations, Beckham's counsel sent

13    a detailed letter to Plaintiff's counsel explaining the factual inconsistencies and impossibilities in

14    the FAC – offering Plaintiff an opportunity to dismiss Beckham from the action.  Plaintiff declined

15    to take this offramp when it was available.  Indeed, Plaintiff's Counsel ignored the letter entirely,

16    and then, in response to an email follow-up, callously retorted "either file your motions or not."

17    (Jablon Decl., ¶ 5: Exh. 4.)

18        In light of the foregoing, the Court should issue the most severe sanctions possible against

19    Plaintiff's Counsel. There is absolutely no credible defense to their conduct in prosecuting this

20    lawsuit. They filed a factually absurd, frivolous action against Beckham; they were advised that

21    their claims were fabricated and were contradicted by irrefutable evidence, with which they were

22    provided; and they steadfastly refused to withdraw those provably false claims.

23        The Court should impose severe sanctions, including dismissal of this lawsuit and an award

24    of monetary sanctions in the amount of Beckham's fees incurred in connection with this action,

25    which will hopefully deter Plaintiff and her counsel from further engaging in such violations of Rule

26    11.  Such monetary sanctions should be payable jointly and severally by Plaintiff and her counsel.

27    *Estate of Calloway v. Marvel Entertainment Group, a Div. of Cadence Industries Corp.* (2d Cir.

28    1993) 9 F.3d 237, 239 ("The Rule 11 violation was thus a coordinated effort, and joint and several

NOTICE OF MOTION AND MOTION OF ODELL BECKHAM JR. FOR THE IMPOSITION OF SANCTIONS
AGAINST PLAINTIFFS AND THEIR COUNSEL PURSUANT TO FED. R. CIV. P. 11

1  liability is entirely appropriate"); Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 17-B, at

2  17:181 ("the court may properly impose sanctions against the client and attorney jointly and

3  severally for FRCP 11 violations in papers signed by the attorney").

4       Beckham anticipates incurring fees of not less than $61,896  in connection with this Motion,

5  as a result of Plaintiff's and her counsel's Rule 11 violations, and should be awarded sanctions in

6  not less than that amount.  (Jablon Decl. ¶ 7).

7  **IV.**    <u>**CONCLUSION**</u>

8       Based on each and every one of the grounds set forth above, this Court should enter an order

9  awarding monetary sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure, in favor

10  of Beckham and against Plaintiff and her counsel, jointly and severally, and also should dismiss the

11  First Amended Complaint's claims against Beckham, which are frivolous.

12

13  DATED:  August 20, 2025        RESCH POLSTER & BERGER LLP

14

15

16  By: _____

17        ANDREW V. JABLON
      STACEY N. KNOX
    Attorneys for Defendant Odell Beckham, Jr.

18

19

20

21

22

23

24

25

26

27

28

*RESCH POLSTER & BERGER LLP*

Case No. 3:24-cv-07191-RFL

NOTICE OF MOTION AND MOTION OF ODELL BECKHAM JR. FOR THE IMPOSITION OF SANCTIONS
AGAINST PLAINTIFFS AND THEIR COUNSEL PURSUANT TO FED. R. CIV. P. 11

1138912.3